**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ANA CECILIA HALPIN,
FRANK EDWARD SWANSON,
and DONALD EUGENE HALPIN,**

     **Plaintiff,**

**vs.**                   **Case No. 4:06cv457-RH/WCS**

**MONICA DAVID, et al.,**

     **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Defendant Crosby filed a motion for summary judgment, or in the alternative, a motion to dismiss.  Doc. 96.  After review of the arguments raised in the motion, this motion was deemed to be a motion to dismiss the second amended complaint.  Doc. 100.  Plaintiffs were directed to file their response to the motion, and their opposition was filed on September 2, 2008.  Doc. 108.

**Allegations of the Second Amended Complaint, doc. 90**

Plaintiffs sue Defendant Crosby "in his individual capacity for monetary damages."  Doc. 90, p. 4.  Plaintiff's claims against Crosby are premised upon the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d), Count I, the First Amendment (retaliation), Count III, and Florida's Government in

the Sunshine Act, FLA. STAT. § 286.001, Count V.  Doc. 90.  There is also an equal

protection claim, Count III, and an Ex Post Facto claim, Count IV, but those claims do

not pertain to Defendant Crosby.  *Id.*

Defendant Crosby was the Secretary for the Florida Department of Corrections

from 2003 to 2006.  *Id.*, at 9.  Plaintiffs claim that Defendant Crosby conspired with

others in a "scheme to misuse their public office to accept bribes, extort money, and

retaliate against Inmate Halpin, and a scheme to defraud Plaintiffs, and all other

similarly situated inmates and their family members, by false and fraudulent pretense,

representations, or promises or willful misrepresentations of a future act that Plaintiffs

were receiving honest and fair services from the Defendants."  *Id.*, at 13.

Plaintiffs allege that Defendants schemed to "keep as many inmates as possible

incarcerated in the FDOC so that Crosby . . . could charge the FDOC inmate population

a 310% markup above fair market value for inmate commissary items thereby affording

Crosby . . . bigger kickbacks . . . . "  Doc. 90, p. 15-16.  Plaintiffs claim Defendant

Crosby "made sure that the parole/clemency eligible inmates received bad institutional

reports if they did not pay FPC Defendants the required bribe."  *Id.*, at 16.  Plaintiffs

further allege that Defendant Crosby and others conspired to have the Florida

Legislature change parole hearings from every two years to five years to keep more

inmates in prison so they could receive bigger kickbacks.  *Id.*, at 17-19.  Defendant

Crosby is alleged to have been "taking bribes from Keefe and AIS in exchange for

awarding the FDOC commissary contract to Keefe and AIS . . . ."  *Id.*, at 19.  Defendant

Crosby allegedly also accepted bribes to have inmates transferred to various

institutions.  *Id.*, at 21.  It is further alleged that certain Defendants, "and possibly"

Defendant Crosby "ordered" prison officials "to retaliate against Inmate Halpin for filing the instant cause of action . . . " Doc. 90, p. 20.

**Defendant Crosby's motion to dismiss, doc. 96**

Defendant Crosby seeks dismissal of this action against him because Plaintiffs did not "properly and timely" exhaust administrative remedies prior to commencing this lawsuit.  Doc. 96, p. 1.  Defendant argues that Plaintiff's grievances, filed in the summer of 2006, were untimely because Plaintiff Donald Halpin asserted he was aware of higher charges in the canteen in January, 2004.  *Id.*, at 5.  Defendant argues that Plaintiff's claim concerning the Parole Commission denying his parole should be dismissed because Plaintiff did not complete the grievance procedures concerning that claim.  *Id.*, at 6.  Finally, Defendant contends that Plaintiff's grievances as to the claim of retaliation against Crosby were untimely as they were filed a year after the incident complained of occurred.  *Id.*

Defendant also contends that Plaintiffs' claim of damages for a First Amendment violation (retaliation) is inappropriate against Defendant Crosby because he "may not be held liable solely on a respondeat superior theory."  Doc. 96, pp. 6-7.  Defendant asserts there are no allegations showing how Defendant Crosby was personally involved or that there was a causal connection between the actions of Defendant Crosby and the alleged retaliation.  *Id.*, at 7.

Defendant Crosby also asserts that Plaintiffs do not have compensable damages under RICO, and the asserted damages fail to meet "the statutory standing limitation."  Doc. 96, pp. 7-8.  Defendant Crosby also seeks dismissal under the Prison Litigation Reform Act (hereinafter "PLRA"), 42 U.S.C. § 1997e(e), which bars civil actions for

"mental or emotional injury suffered while in custody without a prior showing of physical injury."  *Id.*, at 8.  Finally, Defendant Crosby seeks dismissal on the basis that Plaintiffs state law claim for violating the Government in the Sunshine Act should be dismissed because it is "not firmly rooted in the other claim which may remain in this action."  Doc. 96, p. 8.

**Plaintiffs' response, doc. 108**

Plaintiffs contend they did "exhaust all administrative remedies <u>as available</u>, or were prevented form exhausting said administrative remedies in a timely fashion."  Doc. 108, p. 1.  They further contend that co-Plaintiffs, Mrs. Halpin and Mr. Swanson, did not have to exhaust administrative remedies since they are not prisoners.  *Id.*, at 2. Plaintiffs assert that they "first learned of the Crosby/Clark investigation in December 2005 when Inmate Halpin received his issue of Florida Prison Legal Perspectives (FPLP) magazine."  *Id.*, *citing* Plaintiff's ex. 2.  Plaintiffs attempted to "obtain various governmental agencies' invesigative reports to substantiate their allegations against Defendant Crosby, but were informed no material could be released until the investigation was completed."  *Id.*, at 2, *citing* Plaintiff's ex. 1.

Plaintiffs also argue that the Department of Corrections responded to Plaintiff Halpin's grievances concerning illegal canteen prices and "did not dismiss the grievance as being untimely."  Doc. 108, p. 3.  Plaintiff was warned not to pursue grievances concerning the parole commission, and claims that filing a grievance concerning retaliation "one year after the date of the incident in not untimely" because it was filed "within a reasonable time" pursuant to FLA. ADMIN. CODE R. 33-103.011(1)(a).

Plaintiffs also argue that prison officials actively attempted to thwart his efforts at exhaustion.  Doc. 108, p. 4.  Thus, the Defendant should be estopped from raising the affirmative defense of exhaustion because prison officials inhibited his ability to utilize grievance procedures.  *Id.*, at 4-5.

Plaintiffs assert that Defendant Crosby is not being held liable under a *respondeat superior* theory for the retaliation claim, but, because as Secretary of the Department, he "set policies, wrote regulations and gave orders to retaliate against inmate 'writ writers' or inmates who complained about the FDOC to outside agencies . . . ."  *Id.*, at 6-7.

Plaintiffs also contend they were "directly injured" by the Defendants' racketeering activities and suffered damages which "flowed from the commission of the predicate acts."  Doc. 108, pp. 9-23.  Further, Plaintiffs contend that Plaintiff Donald Halpin alleged suffering physical injury and, thus, his claims are not barred by the PLRA.  *Id.*, at 23.

**Standard of Review**

In considering whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted, the court must consider whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that dismissal should not be ordered unless it appears beyond doubt that plaintiff could prove "no set of facts" in support of his claims which would entitle him to relief).  The pleading standard is not heightened, but flexible, in line with

Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.  Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

A complaint's factual allegations must be accepted as true when ruling on a motion to dismiss.  Marsh v. Butler Co., 268 F.3d 1014, 1023 (11th Cir. 2001); Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S. Ct. 1586 (1993).  Dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965, quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).  A complaint must, nevertheless, provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and waste

time.  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d

577 (2005), *quoted in* Twombly, 127 S.Ct. at 1966.

The Eleventh Circuit has clarified that the "defense of failure to properly exhaust

available administrative remedies under the PLRA should be treated as a matter in

abatement."  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008), *explained in* Turner

v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008).  Deciding an exhaustion issue is "not

ordinarily the proper subject for a summary judgment" motion; instead it should be

considered in a motion to dismiss.  Bryant, 530 F.3d at 1374-75.  Thus, Defendant

Crosby's motion has been reviewed as a motion to dismiss.  The fact that Plaintiffs filed

exhibits to show exhaustion, doc. 108, does not require conversion to a summary

judgment motion.  The process simply provided Plaintiffs "a meaningful opportunity to

oppose" the motion to dismiss, doc. 96.  530 F.3d at 1371, n.2.  Having a sufficient

record of Plaintiff Halpin's grievances enabled full and proper consideration of the

exhaustion issue.  Thus, Defendant Crosby's motion, doc. 96, is treated solely as a

motion to dismiss.

**Analysis**

### Exhaustion of administrative remedies

When the Prison Litigation Reform Act was enacted, Congress mandated that

"[n]o action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a), *quoted in* doc. 68, p. 2.  The RICO claim and the other federal

claims are actions "brought with respect to prison conditions under section 1983 of this

title, or any other Federal law."  The state law Government in the Sunshine claim is not

such an action, and exhaustion is not required as to that claim.

The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is

brought pursuant to § 1983 or Bivens.  Alexander v. Hawk, 159 F.3d 1321, 1324-26

(11th Cir. 1998).  There is no discretion to waive this requirement or provide

continuances of prisoner litigation in the event that a claim has not been exhausted prior

to filing.  Alexander, 159 F.3d at 1325; see also Porter v. Nussle, 534 U.S. 516, 122

S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement

applies to all inmate suits about prison life, whether they involve general circumstances

or particular episodes, and whether they allege excessive force or some other wrong.");

Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must

"provide with his grievance all relevant information reasonably available to him" but he

cannot be required to name individuals responsible for challenged conduct when he

could not yet identify those persons).  The Court may not consider the adequacy or

futility of administrative remedies, but only the availability of such.[1]  Higginbottom v.

Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), citing Alexander, 159 F.3d at 1323.  Even

where an inmate seeks only monetary damages in a civil rights case, he must complete

the prison administrative process if it could provide some sort of relief on the complaint

although no money could be given administratively.  Booth v. Churner, 531 U.S. 956,

121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  "Requiring exhaustion allows prison

---

[1] However, an inmate is not required to grieve a "breakdown in the grievance
process" because the PLRA only requires that a prisoner exhaust his "available
administrative remedies."  Turner v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008).
"[I]t is possible for retaliation or the threat of retaliation to make administrative remedies
unavailable to an inmate."  Id., at 1084 (citations omitted).

officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[2].

A prisoner must also comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of the grievance. *See* Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999)(noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown"). If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted. Brown, 212 F.3d at 1206, n.1; Jones, 549 U.S. at 223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d

---

[2] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

Plaintiff Donald Halpin is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103.  The other two Plaintiffs, however, Ana Halpin and Frank Swanson, are not inmates and 42 U.S.C. § 1997e(a) is inapplicable to them.  Doc. 108, p. 2.  As 42 U.S.C. § 1983 does not require exhaustion, these two non-prisoner Plaintiffs are not affected by this argument. See Jones, 549 U.S. at 212, 127 S.Ct. at 919, citing Patsy v. Board of Regents of Fla., 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

Inmate Donald Halpin filed an informal grievance on July 14, 2006, alleging "price gouging" in the canteen and kickbacks to Defendant Crosby.  Ex. A, pp. 45-46 (Doc. 90-2, pp. 47-48).[3]  It was denied.  A formal grievance likewise was denied on the merits. Id., at 43-44 (doc. 90-2, pp. 45-46).  Plaintiff submitted a grievance appeal to the Secretary's Office on or about August 3, 2006, alleging "price gouging" in the Canteen.

_____

[3] All exhibits are Plaintiffs' exhibits which were filed as exhibit A, attached to document 90.  Hereafter, they are referenced both by "hard copy" page number, followed by the citation on the electronic docket.

Ex. A, p. 42 (Doc. 90-2, p. 44).  The response adopting the response to the formal grievance, that prices were "approved by the Florida Department of Corrections Canteen Review Team after extensive research."  *Id.*, at 41 and 43 (doc. 90-2, pp. 43, 45).

While Defendant Crosby contends that Plaintiff failed to exhaust administrative remedies as to this RICO claim (price gouging) because Plaintiff allegedly knew about the higher canteen charges in 2004, two years before he filed his first grievance on July 14, 2006, doc. 96, p. 5, the Department of Corrections did not reject Plaintiff's grievances on this issue as untimely.  Rather, the grievances were "denied" on the merits at every level.  *See* Ex, pp. 43, 45 (doc. 90-2, pp. 45, 47).  Where the Department of Corrections responds to an untimely grievance on the merits, and the purpose of the grievance system is fulfilled, Plaintiff's administrative remedies are exhausted.  The rules governing exhaustion are the Department's rules, not judicial rules of procedure.  Thus, Plaintiff Donald Halpin did exhaust administrative remedies as to the RICO claim concerning excessive prices in the canteen and the kickback scheme, acts that form part of the RICO claim.  *See* ex. A, pp. 44-46 (doc. 90-2, pp. 46-48).  Defendant's motion to dismiss on this basis should be denied.[4]

Another component of the RICO claim "concerns the actions of the Parole Commission denying his parole in <u>October 2005</u>" and Plaintiffs alleging negative reports were provided by DOC officials when bribery fees were not made to continue kickbacks from a large prison population.  Doc. 96, p. 6.  Again, Defendant Crosby contends

---

[4] The failure to exhaust is an affirmative defense under the PLRA, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  <u>Jones v. Bock</u>, 549 U.S. at 216, 127 S.Ct. at 921.

Plaintiff's grievances on this claim should be dismissed as untimely and for failure to exhaust because no grievance appeal was filed after the denial of Plaintiff's formal grievance.  *Id.*

Plaintiff argues that FLA. ADMIN. CODE R. 33-103.001(4)(a)(b)(c) and (d), rules governing the grievance system do not permit filing grievances on matters concerning parole decisions and "matters beyond the control of the department."  Doc. 108, p. 3. Rule 33-103.001(3) provides that inmates can file grievances "regarding the following matters:"

(a)    The substance, interpretation, and application of rules and procedures of the department that affect them personally;

(b)    The interpretation and application of state and federal laws and regulations that affect them personally;

(c)    Reprisals against inmates for filing a complaint or appeal under the inmate grievance procedure, or for participating in an inmate grievance proceeding;

(d)    Incidents occurring within the institution that affect them personally;

(e)    Conditions of care or supervision within the authority of the Florida Department of Corrections, except as noted herein.

FLA. ADMIN. CODE R. 33-103.001(3)(a)-(e) (effective 2000).  The subject inmates may not grieve are listed in paragraph (4):

(a)    The substance of State and federal court decisions;

(b)    The substance of State and federal laws and regulations;

(c)    Parole decisions;

(d)    Other matters beyond the control of the department.

FLA. ADMIN. CODE R. 33-103.001(4)(a)-(d) (effective 2000).

On April 25, 2006, Plaintiff submitted an informal grievance in which he alleged that during his October 5, 2005 parole hearing, "Florida D.O.C. Central office employee(s)" had told the Parole Commission that Plaintiff was a "security threat" and that such a "reason" was due to Plaintiff's past litigation and because the FDOC did not want inmates released from prison so they could "maintain a very high prison population thereby affording the FDOC to make substantial amounts of money from the inmate population, i.e., federal subsidies, large profits from the Inmate Canteens . . . ."  Ex. A, pp. 6-7 (doc. 90-2 (pp.8-9).  In denying Plaintiff's grievance and reiterating the basis for deeming Plaintiff a security threat and presenting that information to the Parole Commission, the final comment on the informal grievance states: "[y]our allegations against FPC need to be addressed to FPC."  *Id.*, at 6 (doc. 90-2, p. 8).  The grievance was not, however, rejected as untimely.  Plaintiff then filed a formal grievance to the Warden on May 6, 2006, alleging that improper "motives" existed which is why the parole commission was given "a negative report" about Plaintiff.  Ex. A, p. 4 (doc. 90-2, p. 6).  The appeal was "denied" on May 8, 2006, finding that the informal grievance response "adequately addressed" Plaintiff's concerns.  Ex. A, p. 3 (doc. 90-2, p. 5).  Plaintiff was advised that he could "obtain further administrative review" by filing an appeal.  *Id.*  There is no demonstration that Plaintiff filed the appeal.

Plaintiffs argue that this issue was "outside the realm of FDOC matters" under Rule 33-103.001(3), (4), and, thus, inmate Halpin did not need to exhaust his remedies by filing an appeal.  Doc. 108.  Plaintiffs, however, ignore that the grievance was not complaining about the parole *decision*, which would be an inappropriate matter for the Department's grievance system, but about the *Department's input* into a parole hearing.

That distinction enabled Plaintiff Halpin to pursue the grievance process and, as explained to him on the denial of his formal grievance, he could obtain further review by filing a grievance appeal if dissatisfied with the result.  Plaintiff's informal and formal grievances were addressed on the merits.  Plaintiff did not file an appeal and, thus, did not exhaust his specific RICO claim concerning the alleged motives for the Department's input.  Defendant's motion to dismiss this RICO claim should be granted and the claim dismissed as to Plaintiff Donald Halpin only.  This RICO claim continues against Defendant Crosby by Plaintiffs Ana Halpin and Frank Swanson, as they are not required to exhaust administrative remedies.

**Retaliation**

Defendant Crosby argues that the First Amendment retaliation claim should also be dismissed because the grievance was untimely filed.  Doc. 96, p. 6.  Inmate Halpin presented an informal grievance on April 25, 2006, alleging a broad number of complaints.  He complained about the October 5, 2005, parole hearing and the Department's labeling Plaintiff as a "security threat," and claimed he was really labeled that way "due to ]his] past litigation."  Doc. 90, Ex. A, pp. 6-7 (Doc. 90-2, pp. 8-9).  Plaintiff argued there was a scheme to keep as many inmates in prison so that substantial profits could be made.  Doc. 90, Ex. A, pp. 6- 7 (Doc. 90-2, pp. 8-9).  It was denied on April 27, 2006.  *Id.*, at 8.

Plaintiff also submitted a formal grievance to the Warden on March 29, 2008, and then a grievance appeal to the Secretary on April 24, 2008, alleging that he was being retaliated against and officials at Wakulla Correctional Institution were sabotaging Plaintiff's grievance efforts.  Ex. A, pp. 28, 30, and 32 (Doc. 90-2, pp. 30, 32, 34).

Plaintiff's grievances were returned for being untimely.  *Id.*, at 31, 33.  The appeal noted that Plaintiff was attempting to grieve an "issue that occurred a year ago" and that being in transit for two months "would have no bearing on" complying with the required time frames for filing grievances.  Ex. A, p. 33 (Doc. 90-2, p. 35); *see also* ex. A, pp. 34-40 (doc. 90-2, pp. 36-42).[5]  Plaintiff Ana Halpin sent Secretary James McDonough a letter on April 27, 2007, explaining her belief that Plaintiff was being transferred due to retaliation.  Ex. A, pp. 60-61 (Doc. 90-2, pp. 59-60).

It does not appear that Plaintiff Donald Halpin exhausted his claim concerning retaliation by prison officials in violation of his First Amendment rights.  Plaintiffs argue that Inmate Halpin's grievances on this issue were filed within a "reasonable" time as permitted by FLA. ADMIN. CODE R. 33-103.011(1)(a).  Doc. 108, pp. 3-5.  Yet the Department of Corrections declined to address Plaintiff's grievances on this issue as untimely.  Plaintiffs then argue that exhaustion was not possible because prison officials were sabotaging his grievances.

While this argument could have some merit, it need not be addressed at this time because the retaliation claim against Crosby, as alleged in the second amended complaint, is fatally defective.  The claim concerns events which transpired between March 6, 2007, and at least May, 15, 2007, and does not allege any action by Defendant Crosby.  Doc. 90, pp. 27-34.  Defendant Crosby was the Secretary of the

---

[5] The grievance is dated by Plaintiff Donald Halpin, March 28, 2008, and argues that his transfer away from Wakulla Correctional Institution was retaliatory.  Plaintiff was ordered to pack his belonging to leave Wakulla Correctional Institution on April 17, 2007, and arrived at Hardee Correctional Institution on May 15, 2007.  Doc. 90-2, pp. 41-42.  The grievances make clear Plaintiff is grieving events nearly a year old.  It is also noted that Plaintiffs initiated this action on October 4, 2006, before Plaintiff was even transferred.  *See* doc. 1.

Department only between 2003 and 2006, as alleged by Plaintiffs.  Doc. 90, p. 4.

Plaintiffs fail to allege any actions by Defendant Crosby of retaliation.  Defendant

Crosby was not part of the Department during the time specified in Inmate Halpin's

grievances.  There is an allegation that Crosby "possibly" ordered others to retaliate

against him, doc. 90, p. 20, and there is an allegation that Plaintiff was transferred to

Union C.I., "where Defendants Crosby and Clark's cronies work," doc. 90, p. 33, but

these allegations are too vague to state a claim of retaliation.  Defendant Crosby cannot

be held responsible for the compliance of other prison officials with "unwritten policies

and procedures," or alleged tolerance of "corruption," as later argued by Plaintiffs, doc.

108, pp. 6-8, because Defendant Crosby was no longer the policy maker for the

Department during 2007.  Defendant Crosby is not liable to Plaintiff without plausible

allegations of fact to show a causal connection to the alleged retaliation.  Swint v. City of

Wadley, 51 F.3d 988, 999 (11th Cir. 1995), citing Rivas v. Freeman, 940 F.2d 1491,

1495 (11th Cir. 1991) and Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Bell

Atlantic Corp. v. Twombly, supra. Therefore, because there are no allegations of wrong-

doing against Defendant Crosby for retaliation in the second amended complaint,

Defendant Crosby's motion to dismiss for failure to state a claim should be granted as to

the retaliation claim.[6]

---

[6] Since Plaintiffs have not stated a claim for retaliation against Defendant Crosby,
the remaining argument concerning the ability to recover damages for the First
Amendment violation, doc. 96, pp. 6-7, need not be addressed.

**Compensable damages under RICO**

Defendant Crosby also argued that Plaintiffs lack "compensable damages" under RICO.  Doc. 96, p. 7, *citing* 18 U.S.C. § 1964(c).[7]  Defendant Crosby contends that the claimed damages must "flow from the commission of the predicate acts."  Doc. 96, p. 8, *citing* Sedima v. Imrex, 473 U.S. 479, 496 (1985).  This argument now applies to the RICO claim of Plaintiffs Ana Halpin and Frank Swanson with respect to the "input" of the Department of Corrections into the parole decision concerning Inmate Halpin, and the RICO of all Plaintiffs as to the alleged "price gouging" at the canteen..

The Supreme Court held in Sedima that the RICO statute, § 1962(c),[8] requires a plaintiff to allege each of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, 473 U.S. at 497, 105 S.Ct. 3275, 3285.  It requires nothing more.  473 U.S. at 497, 105 S.Ct. at 3285.

> Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.

Sedima, 473 U.S. 479, 497, 105 S.Ct. 3275, 3285.  Defendant Crosby suggests that Plaintiffs' damages were alleged to only be the cost of an "attorney's fee for attending

---

[7] In relevant part, this statute provides:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  18 U.S.C. § 1964(c).

[8] The statute makes it "illegal 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .' "  18 U.S.C. § 1962(c), *quoted in* Williams v. Mohawk Industries, Inc., 465 F.3d 1277, 1282 (11th Cir. 2006).

the parole hearing and the travel expenses to the parole hearing."  Doc. 96, p. 7.

Defendant asserts that those costs "would have been incurred regardless of the alleged

violation."  Doc. 96, p. 7.  Further, Defendant contends those expenses are irrelevant to

the alleged RICO violations and are not recoverable because they do not "flow from the

commission of the predicate acts."  *Id.*, at 8.

Defendant cites Williams v. Mohawk Industries, 465 F.3d 1277, 1287 (11th Cir.

2006), for the proposition that a plaintiff's injury must be "by reason of" the RICO

violation.  Doc. 96, p. 7.  In other words, Defendant Crosby contends that the alleged

violation must "lead directly" to the plaintiff's injury.  *Id.*, *citing* Anza v. Ideal Steel Supply

Corp., 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006).

In Williams, the Eleventh Circuit explained that "[t]he 'by reason of' requirement

implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to

sue; and (2) proximate cause."  465 F.3d at 1287.  Relying on the Supreme Court's

decision in Anza, the Eleventh Circuit noted that plaintiffs are not required "to show that

the injurious conduct is the sole cause of the injury asserted," but that there is " 'some

direct relation' between the injury alleged and the injurious conduct in order to show

proximate cause."  465 F.3d at 1287-88.

It cannot be said, on this motion to dismiss, that incurring expenses for travel and

attorney's fees to attend a futile parole hearing were not proximately caused by the

RICO violation alleged.  Further, Plaintiffs also claim the loss of "approximately $2,000

in excessive canteen purchases by Plaintiffs Mrs. Halpin and Inmate Halpin between

February 2004 through October 2007 . . .  as a direct and proximate result of the

Defendants RICO activities."  Doc. 90, p. 15.  Plaintiffs have alleged sufficient injury

directly related to the surviving RICO violations.  The motion to dismiss should be denied as to this argument.

### Physical Injury requirement

The requirement in the PLRA that there be physical injury before recovering emotional damages does not apply to Defendants Ana Halpin and Frank Swanson as they are not prisoners.  42 U.S.C. § 1997e(e);[9] *See* <u>Harris v. Garner</u>, 216 F.3d 970, 974-75 (11th Cir. 2000) (noting that § 1997e(e) does not apply to former prisoners who are no longer incarcerated at the time a case is filed), *relying on* <u>Kerr v. Puckett</u>, 138 F.3d 321, 322-23 (7th Cir. 1998); *see also* <u>Harris</u>, 216 F.3d at 991 (Tjoflat, dissenting) (stating the statute "does not apply to persons who have never been prisoners").  Plaintiffs sought compensatory damages as well as punitive damages, in addition to requesting injunctive and declaratory relief.  Doc. 90, p. 38.  Moreover, while Plaintiff Donald Halpin might be limited in the amount of monetary damages he could recover, should he be successful, a limitation in recovery is not a basis for dismissal of the entire lawsuit.  *See* <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1334-36 (11th Cir. 2008) (holding that an inmate may seek nominal damages for First Amendment violations).  Plaintiff Donald Halpin, should he be successful, could seek nominal damages and injunctive or declaratory relief, but he would be precluded from an award of compensatory or punitive damages.  <u>Tsmith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007).  The motion to dismiss should be denied as to this argument, with the limitations noted above.

---

[9]  The statute provides a limitation on recovery:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

**State law claim**

Defendant Crosby's final argument is for the Court to decline to exercise supplemental jurisdiction over Plaintiffs' claim that Defendants violated the Government in the Sunshine Act.  Doc. 96.  As the federal claims are retained in this case, and all claims are sufficiently intermingled and related, the state law claim should not be dismissed.

**Conclusion**

The motion to dismiss should be denied in part for the following reasons:  (1) exhaustion is not required of Plaintiffs Ana Halpin and Frank Swanson as to their RICO claims; (2) Plaintiff Donald Halpin exhausted administrative remedies as to the RICO claim concerning excessive prices in the canteen and the kickback scheme; (3) Plaintiffs have adequately alleged "compensable damages" under RICO; (4) and the state law claim is sufficiently connected to surviving federal claims to be retained. Defendant Crosby's motion to dismiss should be granted as to:  (1) Plaintiff Donald Halpin's RICO claim that Defendant Crosby gave poor recommendations to the Parole Commission for prisoners, like himself, who did not "pay the required bribe" because he failed to exhaust administrative remedies as to this RICO claim; (2) Plaintiffs' retaliation claim for failure to state a claim as to Defendant Crosby; and (3) Plaintiff Donald Halpin's request for compensatory and punitive damages against Defendant Crosby pursuant to 42 U.S.C. § 1997e(e).

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Crosby's motion to dismiss, doc. 96, be **GRANTED** the complaint **DISMISSED** as to (1)

Plaintiffs' retaliation claim (Count III) against Crosby; (2) Plaintiff Donald Halpin's RICO claim (Count I) against Crosby for providing poor recommendations to the Parole Commission for prisoners who did not pay a bribe, because Plaintiff failed to exhaust this claim; (3) and all of Plaintiff Donald Halpin's requests for compensatory and punitive damages against Crosby for lack of an allegation of physical injury pursuant to 42 U.S.C. § 1997e(e).  It is further **RECOMMENDED** that the motion to dismiss, doc. 96, be otherwise **DENIED**, and the case be **REMANDED** for further proceedings.

      **IN CHAMBERS** at Tallahassee, Florida, on February 20, 2009.


                     **s/   William C. Sherrill, Jr.**
                     **WILLIAM C. SHERRILL, JR.**
                     **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

    **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**