**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ANA CECILIA HALPIN,
FRANK EDWARD SWANSON,
and DONALD EUGENE HALPIN,**

      **Plaintiff,**

**vs.**               **Case No. 4:06cv457-RH/WCS**

**MONICA DAVID,
ALLEN CLARK, et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

On December 12, 2008, Defendant Tyler Alcorn filed a motion to dismiss

Plaintiff's second amended complaint as to Defendant Alcorn, or in the alternative, to

drop Defendant Alcorn from this action due to Plaintiffs' failure to comply with a court

order and Rule 21.  Doc. 157.  Plaintiffs were directed to file a response to Defendant's

motion by February 3, 2009, doc. 161, and they did so on January 14, 2009.  Doc. 168.

It is recommended that the motion to dismiss be granted for failure to state a claim upon

which relief may be granted and for lack of standing.  The lack of standing is sufficient to

grant the motion without consideration of the other issues.  This report and

recommendation will, however, address those other issues.

There is also pending a very recently filed motion for leave to again amend the complaint.  Doc. 180.  The motion should be summarily denied without waiting for a response from Defendants.

**Basis for Dismissal, doc. 157**

Defendant Alcorn seeks dismissal of the second amended complaint against Defendant for failure to state a claim upon which relief may be granted, and for lack of standing.  Doc. 157, pp. 1, 3, 15-18.  Defendant also seeks dismissal because the addition of Defendant Alcorn in the second amended complaint was not in compliance with the order granting leave to amend and exceeds the 25 page limitation under Local Rule 5.1(J)(3).  *Id.*, at 2.

**Plaintiffs' Response, doc. 168**

Plaintiffs filed a reply to Defendant Alcorn's motion, and point to a case from the Northern District of Georgia standing for the proposition that under Rule 21, leave to amend should be freely given.  Doc. 168, p. 2.  Plaintiffs also contend "that misjoinder of parties is not a ground for dismissal of an actions [sic]."  *Id.*  They further claim that the second amended complaint states sufficient facts to support their claims.  In the alternative, Plaintiffs request that the motion be denied, or ruling withheld until Plaintiffs can conduct discovery and then be granted another opportunity to amend their complaint.  *Id.*, at 4.  For much of their response, Plaintiffs simply indicate they adopt previously filed arguments raised in response to other pending motions in this case.  Doc. 168.

**Standard of Review**

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Boyer v. Board of County Comm'rs, 922 F. Supp. 476, 482 (D. Kan. 1996), *aff'd,* 108 F.3d 1388, *citing* Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993); Mitchell v. Farcass, 112 F.3d 1483, 1487 (11th Cir. 1997); Mannings v. Board of Public Instr. of Hillsborough County, Fla., 277 F.2d 370, 372 (5th Cir. 1960).  The court should not weigh the evidence, but merely "determine whether the complaint itself is legally sufficient." In re Mosello, 190 B.R. 165, 168, *aff'd,* 193 B.R. 147, *aff'd,* 104 F.3d 352 (Bankr. S.D. N.Y. 1995), *citing* Festa v. Local 3, Int'l Brotherhood of Elec. Workers, 905 F.2d 35, 37 (2d Cir. 1990).

In reviewing a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted, the court must consider whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S.544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that dismissal should not be ordered unless it appears beyond doubt that plaintiff could prove "no set of facts" in support of his claims which would entitle him to relief).  The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief

beyond mere "labels and conclusions, and a formulaic recitation of the elements of a

cause of action . . . ."  Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides
> sufficient notice, a defendant can move for a more definite statement
> under Rule 12(e) before responding.  Moreover, claims lacking merit may
> be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

A court must accept the factual allegations of the complaint as true, Shotz v.

American Airlines, Inc., 420 F.3d 1332, 1334-35 (11th Cir. 2005), and dismissal is not

permissible because of "a judge's disbelief of a complaint's factual allegations."

Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct.

1827, 104 L.Ed.2d 338 (1989).  "*Pro se* pleadings are held to a less stringent standard

than pleadings drafted by attorneys and will, therefore, be liberally construed."

Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  Nevertheless, a

complaint must provide sufficient notice of the claim and the grounds upon which it rests

so that a "largely groundless claim" does not proceed through discovery and "take up

the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544

U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at

1966.

It cannot be assumed that a Plaintiff will prove facts which have not been alleged.

Quality Foods de Centro America, 711 F.2d 989, 995 (11th Cir. 1983) (finding

"[c]onclusory allegations that defendant violated the antitrust laws and plaintiff was

injured thereby will not survive a motion to dismiss if not supported by facts constituting

a legitimate claim for relief."), *citing* Associated General Contractors of California, Inc. v.

<u>California State Council of Carpenters</u>, 459 U.S. 519, 103 S. Ct. 897, 902, 74 L. Ed. 2d 723 (1983).  Hence, even though the pleading standard for a *pro se* complaint is quite liberal, "bald assertions and conclusions of law will not suffice."  <u>Leeds v. Meltz</u>, 85 F.3d 51, 53 (2d Cir. 1996).  Additionally, the court's duty to construe a plaintiff's complaint liberally is not the equivalent of a duty to rewrite it.  <u>Peterson v. Atlanta Housing Auth.</u>, 998 F.2d 904, 912 (11th Cir. 1993).

**Analysis**

### Failure to comply with a court order and N.D. Fla. Loc. R. 5.1(J)(3)

When Plaintiffs were granted leave to amend, the order specifically limited amendment to two issues:  (1) allegations of damages under RICO and (2) allegations to support the retaliation claims.  Doc. 76, *cited in* doc. 157, p. 2.  Defendant Alcorn argues that the "order did not give Plaintiffs leave to amend their complaint in any other respect."  Doc. 157, p. 2.  Defendant contends that the second amended complaint adds "numerous additional factual allegations outside of the scope of those outlined by the court . . .  and . . . [adds] several new defendants, including Mr. Alcorn."  *Id.*  Finally, Defendant Alcorn asserts that Plaintiffs did not request permission to exceed the 25-page limitation imposed by Rule 5.1(J)(3).

After consideration of the motions to dismiss filed earlier in this case, docs. 21, 22, 32, and 36, a report and recommendation was entered recommending that the motions to dismiss be granted.  Doc. 68.  The report and recommendation noted that Plaintiffs had moved for leave to file a supplemental complaint, to bring new claims against Defendants Boyd, West, and Spittler, but Plaintiffs did not specifically request

leave to bring a claim against Defendant Alcorn.  Doc. 68, p. 18, *citing* doc. 64.  The

recommendation was to deny the motion and dismiss this action.  Doc. 68.

In the order addressing this report and recommendation, Chief Judge Hinkle

noted that Plaintiffs' claims, as alleged in the amended complaint, were "indeed

deficient" to state a claim, including the RICO claims.  Doc. 76, pp. 1, 2.  As Plaintiffs

had presented only conclusory allegations that they had suffered injury to "property,"

they would be required to identify the property injured and explain how they lost it.  *Id.*,

at 2-3.  The court said it was not attempting "to address all of the issues," but simply

highlighting some areas of concern for the *pro se* Plaintiffs.  Doc. 76, p. 1-2.  Noting the

deficiencies that would need to be corrected, and since an amended complaint would

be permitted anyway, the request to amend was granted.  Doc. 76.  Plaintiffs were also

allowed "to include in the new complaint the retaliation claims they sought to assert by

supplemental complaint."  *Id.*, at 3.  The order provided: "Plaintiffs are granted leave to

file within 21 days a Second Amended Complaint consistent with this order."  *Id.*, at 4.

Thereafter, Plaintiffs filed a motion seeking an enlargement of the time to file the

second amended complaint.  Doc. 77.  In granting Plaintiffs' motion, my order stated:

"Plaintiffs are reminded to limit the claims raised in the second amended complaint to

those permitted to proceed by Judge Hinkle in the March 24th order, doc. 76."  Doc. 80,

p. 2.

To determine whether the second amended complaint exceeded the leave

provided, the first amended complaint, doc. 7, must be reviewed.  There, Plaintiffs

alleged a pattern of racketeering activity through a scheme to extort money to keep

parole eligible inmates in prison.  *Id.*, ¶¶ 43, 48.  The "structure of the enterprise" was

very broad, including the Parole Commission, the Clemency office, the Department of

Corrections, and all of the individual Defendants.  *Id.*, ¶ 52.  Plaintiffs alleged that bribes

were solicited to obtain favorable parole and clemency recommendations, and that by

keeping more inmates in prison, the Defendants received bigger kickbacks from

corporations that contracted with the Department of Corrections.  *Id.*, ¶ 43.  While the

"kickbacks from corporations" allegation was general enough to cover the new

allegations about the canteen and vendor contracts, those specifics were not in the last

complaint.

Here, in the second amended complaint, Defendant Alcorn is alleged to be the

Vice-President of Sales and Marketing at the Keefe Commissary Network, Inc.  Doc. 90,

pp. 5, 10.  Defendant Alcorn allegedly "exercises command and control over all Keefe

Contracts entered into between Keefe and the FDOC, and the hiring of a lobbyist, Don

Yeager, to help secure the FDOC Commissary Contract, including paying bribes to

Defendant Crosby and Clark."  *Id.*, at 10.  Plaintiffs alleged a scheme to charge "a 310%

markup above fair market value for inmate commissary items" which would provide

"bigger kickbacks to Defendants Crosby and Clark."  *Id.*, at 15-16.  Plaintiffs contend

that Defendants Crosby and Clark took "bribes from Keefe and AIS in exchange for

awarding the FDOC commissary contract to Keefe and AIS . . . ."  *Id.*, at 19.  Plaintiffs

alleged that Defendants had a "scheme to extort and/or accept bribes from Keefe and

AIS in exchange for the commissary contract with FDOC . . . .  *Id.*, at 21.  Defendants

"Alcorn and Dugger sent to the FDOC bids for contracts with the FDOC knowingly

causing a copy of an invitation to bi[d] to be deposited into an authorized depository for

mail in violation of Title 18 U.S.C. § 1341."  *Id.*  Plaintiffs alleged that between 2003 and

2006, "Defendants Crosby, Clark, Alcorn and Dugger corresponded between each other, either by telephone, fax, or e-mail, for the sole purpose of arranging bribery payments in exchange for the FDOC commissary contracts in violation of Title 18 U.S.C. § 1343."  *Id.*  Plaintiffs alleged that the scheme to defraud included selling inmate commissary items which were purported to be sold at "fair market value so that Keefe and AIS could obtain the FDOC commissary contract by offering to pay the FDOC $0.82 per day per each inmate being housed in the FDOC . . . ."  *Id.*, at 23.  Plaintiffs alleged that Keefe and AIS would pay "substantial bribes to Defendants Crosby and Clark," and did so by "imposing a 310% markup for inmate canteen commissary goods."  *Id.*

Defendant Alcorn is involved in this case only with respect to claims raised about an alleged illegal kickback scheme in the canteen.  Doc. 90.  Plaintiffs claims against Defendant Alcorn are limited to Count I, the RICO claim.  Doc. 90, pp. 7-24.  The RICO claim has unquestionably been enlarged from the claim previously alleged in the amended complaint to bring the additional theory of bribery and kickback schemes involving the canteen and vendor contracts.  Moreover, new Defendants are named in the second amended complaint.  Doc. 90.  Thus, Defendant Alcorn is correct that the second amended complaint, as filed, is expanded.

However, while the RICO claim has been significantly expanded, Plaintiffs were given leave to provide additional facts in an effort to support their RICO claims, and that is primarily what they have done, at least as it concerns Defendant Alcorn.  Plaintiffs were allowed to amend the complaint to show injury to their business or property, as required to state a RICO claim.  Doc. 76.  Allegations of higher prices at the canteen, allegations that depend upon the claim that the predicate acts involve kickbacks from

corporations, is in the furtherance of that opportunity to amend.  Plaintiffs were to omit

due process and cruel and unusual punishment claims.  *Id.*  They have complied in

large part and did not violate a specific direction in the order.  As Plaintiffs have

confined their allegations to Defendant Alcorn's involvement in the RICO claim, the

second amended complaint should not be dismissed on the basis that the document

was not in compliance with the prior order.

It is true that the complaint exceeds the page limit imposed by Rule 5.1(J)(3).

However, that is not sufficient reason to dismiss the complaint, especially considering

the number of Defendants and claims presented in this action.  Had Plaintiffs sought

permission to file a longer complaint, permission would have been granted.

### Failure to State a Claim

RICO's private right of action, contained in 18 U.S.C. § 1964(c), provides, in

relevant part, that a "person injured in his business or property by reason of a violation

of section 1962 of this chapter may sue therefor . . . and shall recover threefold the

damages he sustains and the cost of the suit . . , including a reasonable attorney's fee."

Under § 1962, it is "unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. §

1962(c).  "The term 'racketeering activity' is defined to include a host of so-called

predicate acts . . . ."  Bridge v. Phoenix Bond & Indem. Co., __ U.S. __, 128 S.Ct. 2131,

2138, 170 L.Ed. 2d 1012 (2008).  These predicate acts must be sufficiently alleged to

present a viable claim.

Plaintiffs must demonstrate four elements to present a civil RICO claim under 18 U.S.C. § 1962(c), (d):[1]  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1311 (11th Cir. 2000), citing Durham v. Business Management Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988).  Racketeering activity is defined under 18 U.S.C. § 1961 to include "a lengthy list of criminal offenses" as predicate acts.  Langford, 231 F.3d at 1312; see also 18 U.S.C. § 1961.  That list includes offenses such as murder, kidnaping, gambling, arson, robbery, bribery, extortion, mail fraud, wire fraud and counterfeiting.  A "pattern of racketeering activity" is defined as "two predicate acts" of racketeering activity within ten years.  Langford, 231 F.3d at 1311-12; see also 18 U.S.C. § 1961(5).

Furthermore, "[c]ivil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."  Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007), citing Fed.R.Civ.P. 9(b); Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir.1997).  In a case like this, with multiple Defendants, a complaint must "inform each defendant of the nature of his alleged participation in the fraud."  Ambrosia Coal &

---

[1] Those provisions state:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c), (d).

Const. Co., 482 F.3d at 1317, *quoting* Brooks, 116 F.3d at 1381.  A properly pled

complaint cannot simply lump together all Defendants in general allegations of fraud.

Ambrosia Coal & Const. Co., 482 F.3d at 1317.

Defendant Alcorn's primary arguments are that Plaintiffs "failed to allege

sufficient facts to show either 'racketeering activities' or a 'pattern' of racketeering

activities."  Doc. 157, p. 5.  Defendant notes that all of Plaintiffs alleged predicate acts

are fraudulent acts, but none of them are "pleaded with the specificity required under"

Rule 9(b).  *Id.*, at 6.

Plaintiffs alleged Defendant Alcorn committed wire fraud, mail fraud, extortion,

and honest services fraud.  Most of Plaintiffs' allegations lump Defendants together to

make a broad allegation of wrong-doing, with limited specific allegations as to

Defendant Alcorn.  Each of these alleged predicate acts will be addressed separately.

The first predicate act addressed by Defendant is honest services fraud, to the

extent that Plaintiffs attempt to so allege.  Doc. 157, p. 6 n. 2.  Plaintiffs do not allege

that Defendant Alcorn was involved in honest services fraud in violation of 18 U.S.C. §§

1343 and 1346.  Doc. 90, ¶ 67(a).  But if Plaintiffs had alleged that Defendant Alcorn

was involved in this predicate act, Defendant Alcorn is not a public official.  Defendant

Alcorn works in the private sector.  There is no allegation that Alcorn had a fiduciary

duty to the State of Florida.  Therefore, this allegation is insufficient against Defendant

Alcorn.  United States v. deVegter, 198 F.3d 1324, 1330 (11th Cir. 1999), *cert. denied*,

530 U.S. 1264 (2000) ("a private sector violation of § 1346 honest services fraud

involves a breach of a fiduciary duty and reasonably foreseeable economic harm.").

The next predicate act challenged is bribery.  Doc. 157, p. 7.  Plaintiffs allege that Alcorn was involved in a predicate act of bribery.  Doc. 90, ¶ 67(c)(3) and (g)(1) and (4).  Defendant Alcorn argues that, by definition, the federal bribery statute under 18 U.S.C. § 1961(1)(B)[2] requires that one bribe a "public official" who is defined in 18 U.S.C. § 201 as being a federal official.  Doc. 157, p. 7.  As none of the codefendants are federal officials, Defendant Alcorn argues that bribery cannot be a predicate offense to support a RICO claim.  *Id.*  It is true that under 18 U.S.C. § 201(a)(1), the term "public official" is defined as a

> Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.

18 U.S.C. § 201(a)(1).  "Racketeering activity" under RICO is also defined as "(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year . . . " 18 U.S.C. § 1961(a)(A).  Thus, bribery may either be charged under the federal statute, 18 U.S.C. § 201, or it may be charged as a violation of state law.  18 U.S.C. § 1961(1)(A); *see* Bieter Co. v. Blomquist, 987 F.2d 1319 (8th Cir.), *cert. denied*, 510 U.S. 823 (1993) (finding civil RICO claim involving bribery of city officials).  Florida law defines bribery as

---

[2] The statute defines "racketeering activity" as "any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery) . . . ."  18 U.S.C. § 1961(1)(B).

"corruptly to give, offer, or promise temporary restraining order any public servant . . .

any pecuniary or other benefit not authorized by law with an intent or purpose to

influence the performance of any act or omission which the person believes to be, or the

public servant represents as being, within the official discretion of a public servant, in

violation of a public duty, or in performance of a public duty." FLA. STAT. § 838.015(1).[3]

Because bribery is a violation of state law, it *may* state a predicate offense for

Defendant Alcorn.

Defendant Alcorn asserts that Plaintiffs failed to allege facts showing that the

Defendant violated the extortion statute, 18 U.S.C. § 1951 (the Hobbs Act).  Doc. 157,

pp. 7-8.  That statute provides that:

> Whoever in any way or degree obstructs, delays, or affects commerce or the
> movement of any article or commodity in commerce, by robbery or extortion or
> attempts or conspires so to do, or commits or threatens physical violence to any
> person or property in furtherance of a plan or purpose to do anything in violation
> of this section shall be fined under this title or imprisoned not more than twenty
> years, or both.

18 U.S.C. § 1951(a).  Defendant Alcorn contends that Plaintiffs did not allege that any

property was acquired or deprived to support this claim.  *Id.*, at 8.  Indeed, Plaintiffs

stated only that unspecified "Defendants embarked upon a scheme to extort and/or

accept bribes from Keefe and AIS in exchange for the commissary contract with FDOC,

in violation of Title 18 U.S.C. §§ 201 and 1951 . . . . "  Doc. 90, ¶ 67(g)(1).  That

allegation is clearly insufficient to allege that any property was obtained by "actual or

threatened force, violence, or fear, or under color of official right."  18 U.S.C. §

---

[3] Florida law provides that "[a]ny person who commits bribery commits a felony of
the second degree."  FLA. STAT. § 838.015(3).

1951(b)(2).[4]   Plaintiffs also claimed that "Defendants Crosby and Clark demanded or

accepted gifts and payments of money . . . for the purpose of influencing FDOC's

decision to award the FDOC commissary contracts to Keefe and AIS in violation of Title

18 U.S.C. §§ 201, 1951 . . . ."  Doc. 90, ¶ 67(g)(4).  Alcorn was involved with Keefe.  But

there are no allegations of force, violence, or fear, and this fails to provide support for a

§ 1951 extortion claim against Defendant Alcorn.

Defendants are correct that Plaintiffs also have not provided any specific facts to

support their conclusory allegations of a violation of the Travel Act.[5]  Doc. 157, p. 8.

Plaintiffs alleged nothing more than between 2003 and 2006, unspecified "Defendants

used interstate commerce to travel to various states with the intent to distribute the

proceeds of unlawful activity, or otherwise promote, management, establishment, or

carry on, of any unlawful activity in violation of 18 U.S.C. § 1952."  Doc. 90, 67(g)(5).

These allegations fail to provide any specific facts.  Instead, the statement merely

---

[4] The statute defines "extortion" as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).

[5] The Act provides:

Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to– (1) distribute the proceeds of any unlawful activity; or (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform – (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or  (B) an act described in paragraph (2) shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

18 U.S.C. § 1952(a).

quotes language from the Travel Act.  There are no facts indicating which Defendants traveled, the amount of any proceeds, proceeds from what allegedly "unlawful activity," the manner of distribution of the alleged proceeds, or any pertinent fact such as when and where the travel occurred.  Plaintiffs also allege that "Defendants Crosby, Clark, Henry, Alcorn, Dugger and other unknown officials traveled to various states to facilitate and/or negotiate the terms of the FDOC, Keefe, and AIS contracts; to receive cash kickbacks for awarding the FDOC commissary contract to Keefe and AIS . . . ."  Doc. 90, ¶ 60.  Still, it is unknown precisely who traveled where, a specific date within the broad three year span of time, or any other specific and concrete fact.  These still are only conclusory recitations of statutory language.  That is insufficient to state with the particularity required by Rule 9 the facts needed to support an allegation of a Travel Act violation as a predicate act.

Plaintiffs additionally attempt to allege mail fraud, a violation of 18 U.S.C. § 1341, as a predicate act to support a civil RICO claim.  Plaintiffs alleged that from 2003 to 2006, Defendants Alcorn and Dugger mailed bid contracts.  Doc. 90, 67¶(g)(2).

Mail fraud is defined:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1341.

Defendant Alcorn argues that "merely sending a bid (which presumably contains truthful, accurate information) in the mail does not under even the most liberal pleading standard state a claim of mail fraud."  Doc. 157, p. 10.  This argument is not persuasive. The United States Supreme Court recently resolved a conflict between the Courts of Appeals on the question of whether "first-party reliance is an element of a civil RICO claim predicated on mail fraud."  Bridge v. Phoenix Bond & Indem. Co., *supra*, 128 S.Ct. at 2138 (holding that using the "mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation.").  In reaching that decision, the Court remarked:

> . . . RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud.  Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." § 1341.  The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," *Schmuck v. United States*, 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information," *id.*, at 715, 109 S.Ct. 1443.

Bridge, 128 S.Ct. at 2138.

Therefore, "the indictable act under § 1341 is not the fraudulent misrepresentation, but rather the use of the mails with the purpose of executing or attempting to execute a scheme to defraud."  Bridge, 128 S.Ct. at 2140.  It is not necessary that the bid have been false or contain misrepresentations.  It is only

necessary that the mail was used to aid in the carrying out of a fraudulent scheme.

"[U]se of the mails need not be an essential element of the scheme."  Pereira v. United

States, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954), *cited in* Schmuck v.

United States, 489 U.S. 705, 710-711, 109 S.Ct. 1443, 1447-1448 (1989).  The mailing

can simply be incidental "to an essential part of the scheme," *see* Pereira, *supra*, or "a

step in [the] plot," Badders v. United States, 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60

L.Ed. 706 (1916).  Schmuck, 489 U.S. at 711, 712, 109 S.Ct. at 1448, 1449.  The Court

"specifically acknowledged that 'innocent' mailings – ones that contain no false

information – may supply the mailing element' necessary for the crime of mail fraud."

Schmuck, 489 U.S. at 715, 109 S.Ct. at 1450, *citing* Parr v. United States, 363 U.S.

370, 390, 80 S.Ct. 1171, 1183, 4 L.Ed.2d 1277 (1960).  Accordingly, the mailing of a bid

for a contract, which is alleged to be part of a scheme to accept bribes and obtain

fraudulent kickbacks after the establishment of a contractual relationship, is generally

sufficient to allege the predicate act of mail fraud to support a RICO claim, despite the

fact that there is no allegation that there was anything fraudulent in the mailing.

Plaintiffs also present an allegation under the wire fraud statute, 18 U.S.C. §

1343,[6] that "Defendants Crosby, Clark, Alcorn, and Dugger corresponded between each

---

[6] The wire fraud statute provides, in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

other, either by telephone, fax, or e-mail, for the sole purpose of arranging bribery

payments in exchange for the FDOC commissary contracts . . . ."  Doc. 90, ¶ 67(g)(3).

To convict one of wire fraud under 18 U.S.C. § 1343, two elements must be shown: "(1)

intentional participation in a scheme to defraud and (2) use of the interstate wires in

furtherance of the scheme."  United States v. Hasson  333 F.3d 1264, 1270 (11th Cir.

2003), citing United States v. Ross, 131 F.3d 970, 984 (11th Cir. 1997).  Those basic

elements are suggested in Plaintiffs' allegations, but they are not pled with any degree

of specificity.

Although Plaintiffs' allegations against Defendant Alcorn concerning bribery, mail

fraud, and wire fraud, are adequate when tested by the standards above, they fail the

test of specificity.  "When a RICO claim is based on predicate acts involving fraud, those

predicate acts must be pleaded with particularity, in accordance with Fed.R.Civ.P. 9(b)."

Liquidation Com'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1355 (11th

Cir. 2008).  Plaintiffs do not provide particular, discrete facts, much less identify any

specific dates or times, as required by Rule 9,[7] to state the predicate acts of bribery,

mail fraud, or wire fraud against Defendant Alcorn.  See American United Life Ins. Co. v.

Martinez, 480 F.3d 1043, 1067 (11th Cir.), cert. denied, 128 S.Ct. 491 (2007).

It is not enough, however, to make broad and general allegations of these

predicate acts as these fail to show how, or in what way, Defendant Alcorn participated

---

[7] In general, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1066-1067 (11th Cir. 2007), quoting Fed.R.Civ.P. 8.  "If the claim alleges fraud, however, . . . Rule 9(b) dictates that 'the circumstances constituting fraud or mistake shall be stated with particularity.' "  American United Life Ins. Co., 480 F.3d at 1067 (11th Cir. 2007), quoting Fed.R.Civ.P. 9(b).

in bribery, mail, or wire fraud.  It is unknown what Defendant Alcorn did, when he did it, how and with whom his actions occurred, where the events took place, or anything to show Defendant Alcorn's specific involvement.  Plaintiffs' allegations here contain "only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based.  Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1271 (11th Cir. 2004).  The second amended complaint lacks specific factual allegations which put Defendant on notice as required by FED. R. CIV. P. 8, and wholly fails to provide the more particular allegations which are required for claims of fraud as mandated by FED. R. CIV. P. 9(b).

> "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.' "  *Durham v. Bus. Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  The application of Rule 9(b), however, "must not abrogate the concept of notice pleading." *Id.*  Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted).

Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

There are essentially only two factual allegations which specifically name Defendant Alcorn.  Plaintiffs allege that "Defendants Alcorn and Dugger" sent bids for contracts," but there is no indication of who mailed what to whom, or when.  Doc. 90, ¶ 67(g)(2).  The other attempt at a factual allegation states that "Defendants Crosby,

Clark, Alcorn, and Dugger corresponded between each other . . . for the sole purpose of arranging bribery payments in exchange for the commissary contracts . . . ."  Doc. 90, ¶ 67(g)(3).  Those two allegations do not adequately point to a particular way in which Defendant Alcorn was involved.  There is no indication of what he did, what he gained, what he arranged, what he said, who he said it to, when the correspondence occurred, or any other fact to put Defendant Alcorn on notice as to the Plaintiffs' charges against him.  Plaintiffs have not pointed out any act of wrong-doing by Defendant Alcorn.  They have simply made conclusory assertions.

> As in any other fraud case, the pleader  is required "to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud."  . . . It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial.

North Bridge Associates, Inc. v. Boldt, 274 F.3d 38, 43 (1st Cir. 2001), *quotin*g New England Data Servs., Inc. v. Becher, 829 F.2d 286, 291 (1st Cir. 1987), *and citing* Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991).  That is all Plaintiffs have done here.

As Plaintiffs have failed to sufficiently allege the predicate acts necessary to state a claim against Defendant Alcorn, there is no need to proceed further.[8]  Without the predicate acts, there cannot be a showing of a pattern of racketeering activity involving Alcorn.  Having failed to sufficiently allege predicate acts to support a RICO claim, Plaintiffs have also failed to allege a conspiracy claim under RICO against Defendant Alcorn and the complaint should be dismissed as to him.

---

[8] Even if Plaintiffs have adequately pleaded bribery as a predicate act against Defendant Alcorn, that would be only one predicate act as all of the others have not been sufficiently alleged.  That is not enough to sustain a RICO claim against Alcorn.

**Standing**

Plaintiffs contend, in response to the motion to dismiss, doc. 157, that ruling

should be deferred until Plaintiffs have had the opportunity to complete discovery.  Doc.

168, p. 4.  Whether discovery is warranted with respect to the pleading deficiencies

noted above need not be decided.[9]  Plaintiffs, however, have not sufficiently

demonstrated an injury proximately caused to themselves by the alleged RICO

violations to continue this case against Defendant Alcorn.  Discovery will not help

Plaintiffs with the lack of standing.

It has long been held that for private parties to recover under the civil RICO

provisions, their injury must "flow from the commission of the predicate acts."  Sedima v.

Imrex Co., Inc., 473 U.S. 479, 497, 105 S.Ct. 3275, 3285 (1985), *quoted in* Pelletier v.

Zweifel, 921 F.2d 1465, 1497 (11th Cir. 1991).  The statute provides that "[a]ny person

injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may

sue therefor in any appropriate United States district court and shall recover threefold

the damages he sustains and the cost of the suit, . . . "  18 U.S.C. § 1964(c).  The "by

reason of" language requires a private litigant to "show some injury flowing from one or

more predicate acts."  Pelletier, 921 F.2d at 1497.

It must be a direct injury, not an indirect injury, and be proximately caused by the

violation.  Byrne v. Nezhat, 261 F.3d 1075, 1110 (11th Cir. 2001).  Thus to have

standing, a plaintiff must show "he has been injured in his business or property by the

conduct constituting the violation."  Sedima, 473 U.S. at 496, 105 S.Ct. at 3285, *quoted*

---

[9] Plaintiffs have no business making these conclusory allegations if they do not at least have *some* evidence to support the claims.  FED. R. CIV. P. 11.

in <u>Pelletier</u>, 921 F.2d at 1499; *see also* <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). A plaintiff generally "lacks standing to assert, as the basis for mail fraud, misrepresentations directed toward another person or entity." <u>Byrne</u>, 261 F.3d at 1110*, citing* <u>Johnson Enter. v. FPL Group, Inc.</u>, 162 F.3d 1290, 1313 (11th Cir. 1998) (other citations omitted). The issue is whether the injury was directly caused by the RICO violation, not whether the injury was reasonably foreseeable. <u>Bivens Gardens Office Bldg. v. Barnett Banks of Fla.</u>, 140 F.3d 898, 908 (11th Cir. 1998); <u>Byrne</u>, 261 F.3d at 1110.

Several Supreme Court cases provide guidance on determining whether Plaintiffs' alleged injuries, at least as to the claims involving Defendant Alcorn, are "direct" and "proximate" enough to afford standing. In <u>Holmes v. Securities Investor Protection Corporation</u>, 503 U.S. 258, 266, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), the Court recognized that the civil RICO provision was not "meant to allow all factually injured plaintiffs to recover." <u>Holmes</u>, 503 U.S. at 266, 112 S.Ct. 1311, *explained in* <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 456, 126 S.Ct. 1991, 1996, 164 L.Ed.2d 720 (2006). The Court concluded that § 1964(c)'s "by reason of" language required a plaintiff to show that the defendant's RICO violation not only was a 'but for' cause of his injury, but was the proximate cause as well. <u>Holmes</u>, 503 U.S. at 268, 112 S.Ct. 1311. "The direct-relation requirement avoids the difficulties associated with attempting to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. . . ." <u>Holmes</u>, 503 U.S., at 269, 112 S.Ct. 1311, *explained in* <u>Bridge v. Phoenix Bond & Indem. Co.</u>, *supra*, 128 S.Ct. at 2142. Thus, there must be a "direct relation between the injury asserted and the injurious conduct

alleged" and not just that the injury would not have occurred "but for" the violation. <u>Anza</u>, 547 U.S. at 457, 126 S.Ct. at 1996.  Thus, "[w]hen a private plaintiff relies on a violation of the mail or wire fraud statutes as a predicate act for civil RICO, he faces an additional hurdle before he can obtain recovery:  he must show not only that the mail or wire fraud statutes have been violated, but also that he has suffered injury as a result of the violation."  <u>Pelletier</u>, 921 F.2d at 1499.

The RICO violations alleged by Plaintiffs here all pertain to Defendant Alcorn's involvement with the canteen and vendor contracts.  Plaintiffs allege that the resulting harm was "approximately $2,000 in excessive canteen purchases by Plaintiffs Mrs. Halpin and Inmate Halpin between February 2004 through October 2007, due to the loss of fair and honest services as a direct and proximate result of the Defendants RICO activities."  Doc. 90, ¶ 56.  The fraud with respect to the canteen and vendor contracts, however, was committed upon the State of Florida.  The contracts were with the State of Florida, not with Plaintiffs.  The direct victim of this conduct was the State of Florida and the Department of Corrections, not Plaintiffs.  The alleged action of Defendant Alcorn in mailing the bid was a necessary step in obtaining the contract with the State and Department of Corrections to operate the canteens for the Department, but the bid did not go to Plaintiffs.  The canteen prices were only the indirect result of that contractual arrangement.  In addition, the wire fraud did not directly affect Plaintiffs either as that alleged fraud and the alleged payment of bribes directly caused harm to the Department of Corrections and State of Florida in the loss of revenue.  Anyone who might have purchased items within the canteens might have been affected, but this was an indirect effect.

Consequently, Plaintiffs do not have standing to proceed on the RICO claims against Defendant Alcorn.  Therefore, the motion to dismiss, doc. 157, filed by Defendant Alcorn should be granted.  There is no need to permit Plaintiffs to proceed with discovery prior to resolving this motion as they do not have standing to pursue this claim.

**Motion seeking leave to amend**

On March 31, 2009, Plaintiffs filed a motion for leave to file a third amended complaint.  Doc. 180.  Plaintiffs provided a copy of the proposed amended pleading. Doc. 181.  Plaintiffs seek to clarify their previous claims, to expand their First and Fourteenth Amendment claims, ex post facto claims, and add other state law claims, that is, a claim under the Florida Deceptive and Unfair Trade Practice Act, and a common law claim for loss of consortium.  Doc. 180, p. 1.

Rule 15(a) provides that amendment after a responsive pleading has been served, absent written consent of the adverse party, requires leave of court, but "leave shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  While Rule 15(a) generally "restricts the district court's freedom," the Eleventh Circuit has held:

> This policy of rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.

Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989).  If "underlying facts or circumstances" provide a proper and viable basis for relief, then leave to amend "should be freely given."  Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  Futility of amendment is sufficient cause under Rule 15 to deny

permission to amend.  <u>Hall v. United Ins. Co. of Am.</u>, 367 F.3d 1255, 1262-1263 (11th Cir. 2004).  When an amended complaint still fails to state a viable claim, it is not an abuse of discretion to deny a motion to amend.  <u>Smith v. Secretary For Dept. of Corrections</u>, 2007 WL 3089531, *2 (11th Cir., Oct. 24 2007).

Plaintiffs thus seek to add two more state law claims, one of which is for a loss of consortium.  Docs. 180, 181.  The proposed third amended complaint alleges that Plaintiff Ana Halpin, inmate Plaintiff Donald Halpin's wife, has "suffered a real injury to the marital relationship" including loss of "companionship, affection, solace, comfort, conjugal life, fellowship, society and assistance so necessary to a successful marriage . . . ."  Doc. 181, p. 36.  Plaintiffs must mean the denial of parole.  It is hard to imagine how canteen prices might give rise to a loss of consortium claim.  Further, Plaintiff Donald Halpin's conviction and sentence is the direct cause of those injuries.  Moreover, there is no right to parole in Florida and no assurance that Plaintiff would be paroled even if this suit is successful.  As amendment is futile and seeks to bring a legally frivolous claim, Plaintiffs' motion to amend, doc. 180, should be denied.

More important, Plaintiffs filed the initial complaint on October 4, 2006.  Doc. 1.  This case has been proceeding for two and a half years at this point and it has not even left the pleading stage.  This litigation will never reach a resolution as long as claims continue to be supplemented and complicated.  This report and recommendation concerns only one motion to dismiss, doc. 157, but also currently pending are five more dispositive motions.  Docs. 105, 126, 131, 157, and 173.  A great deal of time and effort has already been expended in seeking to resolve the pending issues presented, and in presenting the motions and responses.  That time will be wasted, and this case delayed

for considerably more time, if a third amended complaint is presented adding new

claims and generating new motions to dismiss.  Plaintiffs were given a specific direction

in the order which gave them an opportunity to file the second amended complaint.

Despite the liberal treatment of the canteen claims discussed above, that order was not

open-ended.  The motion to amend should be summarily denied without waiting for a

response from Defendants.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Plaintiffs' motion to amend, doc. 180, be

**DENIED**, and that Defendant Alcorn's motion to dismiss, doc. 157, be **GRANTED** for

failure to provide the more particular allegations which are required for claims of fraud

as mandated by FED. R. CIV. P. 9(b), for failure to state a claim upon which relief may be

granted pursuant to 28 U.S.C. § 1915(e)(2), and for lack of standing, and this case be

**REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on April 7, 2009.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**