**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ANA CECILIA HALPIN,
FRANK EDWARD SWANSON,
and DONALD EUGENE HALPIN,**

     **Plaintiff,**

**vs.**                              **Case No. 4:06cv457-RH/WCS**

**MONICA DAVID, et al.,**

     **Defendants.**

_____/

### REPORT AND RECOMMENDATION, MOTION TO DISMISS, DOC. 105, DEFENDANTS DAVID, DUNPHY, PATE, SUMMERS, KEELS, AND MCNEIL

     Defendants David, Dunphy, Pate, Summers, Keels, and McNeil filed a motion to dismiss Plaintiff's second amended complaint, doc. 90. Doc. 105. Plaintiffs filed a response. Doc. 135.

     These Defendants are Monica David, Chairperson, Florida Parole Commission; Frederick B. Dunphy, Vice-Chairperson, Florida Parole Commission; Tena M. Pate, Secretary, Florida Parole Commission; Linda Scheeler Summers, Administrative Analyst, Florida Parole Commission; Janet H. Keels, Coordinator, Office of Executive Clemency; and Walter A. McNeil, Secretary, Florida Department of Corrections. Doc. 90, p. 1.

Plaintiffs had filed a motion for leave to amend the complaint.  Doc. 180.  I recommended that the motion be summarily denied, doc. 183, and the report and recommendation has been adopted.  Doc. 193.[1]  The active complaint is the second amended complaint.  Doc. 90.

The claims brought by these Plaintiffs all arise from the status of Plaintiff Donald Halpin as a prisoner in the custody of the Florida Department of Corrections.  Hereafter any reference to "Plaintiff Halpin" or to "Plaintiff" is a reference to Donald Halpin.

**Related motions to dismiss**

Two other reports and recommendations are entered today concerning claims brought against Defendants Dugger, Clark, West, Spittler, and Boyd.  If those reports and recommendations, as well as this one, are adopted by the court, the complaint will be dismissed as to all Defendants and judgment should be entered accordingly.

This report and recommendation mentions several issues raised in the instant motion to dismiss, but ultimately recommends that the court not rule on those issues since the underlying claims should be dismissed.  The analysis on those issues is provided in the interest of providing a more complete report and recommendation.

**Standard of Review[2]**

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Boyer v. Board of County Comm'rs, 922 F. Supp. 476, 482 (D. Kan. 1996), *aff'd,*

---

[1] The report and recommendation that was adopted also granted the motion to dismiss filed by Defendant Tyler Alcorn.  Doc. 183, 193.

[2] This standard of review applies to all pending motions to dismiss and will not be repeated in the other reports and recommendations.

108 F.3d 1388, *citing* Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993); Mitchell v.
Farcass, 112 F.3d 1483, 1487 (11th Cir. 1997); Mannings v. Board of Public Instr. of
Hillsborough County, Fla., 277 F.2d 370, 372 (5th Cir. 1960).  The court should not
weigh the evidence, but merely "determine whether the complaint itself is legally
sufficient."  In re Mosello, 190 B.R. 165, 168, *aff'd,* 193 B.R. 147, *aff'd,* 104 F.3d 352
(Bankr. S.D. N.Y. 1995), *citing* Festa v. Local 3, Int'l Brotherhood of Elec. Workers, 905
F.2d 35, 37 (2d Cir. 1990).

In reviewing a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) for failing
to state a claim upon which relief can be granted, the court must consider whether the
plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic
Corp. v. Twombly, 550 U.S.544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the
standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that
dismissal should not be ordered unless it appears beyond doubt that plaintiff could
prove "no set of facts" in support of his claims which would entitle him to relief).  The
pleading standard is not heightened, but flexible, in line with Rule 8's command to
simply give fair notice to the defendant of the plaintiff's claim and the grounds upon
which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d
1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited
exceptions.").  A complaint does not need detailed factual allegations to survive a
motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief
beyond mere "labels and conclusions, and a formulaic recitation of the elements of a
cause of action . . . ."  Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.  Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

The factual allegations of the complaint must be accepted as true, Shotz v. American Airlines, Inc., 420 F.3d 1332, 1334-35 (11th Cir. 2005), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at 1966.

It should not, however, be assumed that a Plaintiff will prove facts which have not been alleged.  Quality Foods de Centro America, 711 F.2d 989, 995 (11th Cir. 1983) (finding "[c]onclusory allegations that defendant violated the antitrust laws and plaintiff was injured thereby will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief"), *citing* Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S. Ct. 897, 902, 74 L. Ed. 2d 723 (1983).  Hence, even though the pleading standard for a *pro se*

complaint is quite liberal, "bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).  Additionally, the court's duty to construe a plaintiff's complaint liberally is not the equivalent of a duty to rewrite it.  Peterson v. Atlanta Housing Auth., 998 F.2d 904, 912 (11th Cir. 1993).

A district court has wide discretion in electing whether or not to consider matters outside the pleadings.  Skyberg v. United Food and Commercial Workers Intern. Union, AFL-CIO, 5 F.3d 297, 302 (8th Cir. 1993).  So long as the ruling is made only by considering the motion to dismiss, complaint, and Plaintiffs' response, even though "matters outside the pleadings were presented to the court," there is no need to construe the motion to dismiss as one for summary judgment.  *See, e.g.,* E.E.O.C. v. Reno, 758 F.2d 581, 583 n.6 (11th Cir. 1985), *citing* Ware v. Assoc. Milk Producers, Inc., 614 F.2d 413 (5th Cir. 1980).  "[T]he mere presence of such matters does not affect a Fed. R. Civ. P. Rule 12 dismissal where a court clearly rules only on the motion to dismiss."  St. Joseph's Hosp., Inc. v. Hospital Auth. of America, 620 F. Supp. 814, 820 (S.D. Ga. 1985), *relying on* E.E.O.C., 758 F.2d at 583.  Thus, notwithstanding the fact that Plaintiffs have filed many pages of attachments to their response, doc. 135, only the instant motion to dismiss, doc. 105, the complaint, doc. 90, and the Plaintiffs' response, doc. 135, will be considered.

**Analysis**

**Failure to exhaust administrative remedies under the PLRA as to Defendant McNeil**

Defendants contend that the grievances Plaintiffs attached to the complaint "do not reflect" that Plaintiff Donald Halpin exhausted administrative remedies concerning

his RICO claim against Defendant McNeil.  Doc. 105, p. 3.  Defendants acknowledge,

however, that Defendant McNeil did not take office as Secretary of the Department until

2008, *after* Plaintiffs' claims accrued.  *Id.*  As noted by Plaintiffs in response to the

motion, Defendant McNeil was substituted under FED. R. CIV. P. 25(d) by the Court *sua*

*sponte* as to the official capacity claims made by Plaintiffs against the Department of

Corrections, which includes the RICO claim.  Doc. 135, p. 3; *see* doc. 81, p. 2.  If

administrative remedies were exhausted as to an official capacity claim against the

former Secretary, and Defendants do not argue to the contrary, that exhausts

administrative remedies as to the official capacity claim.

The motion to dismiss as to McNeil with respect to the RICO claim ought to be

denied on this basis.  However, if the court adopts all reports and recommendations

entered today, it will dismiss all claims and a ruling as to this question would be

unnecessary.

### Injunctive Relief

Defendants contend that Plaintiffs seek injunctive relief against Defendant McNeil

in his official capacity to enjoin Defendant from engaging in unlawful conduct, in

violation of state law.  Doc. 105, pp. 3-4.  Defendant McNeil asserts that injunctive relief

in this regard is barred by the Eleventh Amendment.  *Id.*, at 4, *citing* Pennhurst State

School & Hospl. v. Halderman, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

Plaintiffs argue the state law violations are "overt acts" of the federal RICO claims and

are constitutional violations under the First and Fourteenth Amendments.  Doc. 135, p.

3.  Plaintiffs claim they "can sue Defendant McNeil in his official capacity for injunctive

relief."  Doc. 135, p. 3, *citing* <u>Kentucky v. Graham</u>, 473 U.S. 159, 167, n.14, 105 S.Ct. 3099 (1985) (other citations omitted).

Plaintiffs allege the predicate acts of the racketeering claim and then in the "prayer for relief," request a "permanent injunction enjoining Defendants from engaging in the unlawful conduct complained [of] herein."  Doc. 90, pp. 13-23.  While it is true that the Eleventh Amendment bars suits against state officials seeking to compel a state official to comply with federal law, <u>Pennhurst</u>, 465 U.S. 89, 98-100, 104 S.Ct. 900, 906-08, 79 L.Ed.2d 67 (1984), it "does not insulate state officials acting in their official capacities from suit for prospective injunctive relief to remedy violations of federal constitutional law."  *See* <u>Edelman v. Jordan</u>, 415 U.S. 651, 664-71, 94 S.Ct. 1347, 1356-60, 39 L.Ed.2d 662 (1974), *cited in* <u>Stevens v. Gay</u>, 864 F.2d 113, 114 (11th Cir. 1989).  Where a federal suit alleges federal Constitutional violations, "<u>Pennhurst</u> does not apply."  <u>Brown v. Georgia Dept. of Revenue</u>, 881 F.2d 1018 (11th Cir 1989).

Here, Plaintiff's claims generally allege violations of both state law and federal law as predicate acts for the racketeering claims.  Plaintiffs also bring claims under § 1983.  The motion to dismiss this request for injunctive relief on Eleventh Amendment grounds ought to be denied.  However, if the court adopts all reports and recommendations entered today, it will dismiss all claims and a ruling as to this question would be unnecessary.

**Physical Injury**

Defendants argue that Plaintiff's claims for mental and emotional injury must be dismissed as Plaintiff "makes no allegation of a physical injury" as is required by 42 U.S.C. § 1997e(e).  Doc. 105, p. 4.  That statute provides:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Plaintiff Donald Halpin points to allegations of physical pain in his complaint and the attachments.  Doc. 135, p. 4, *citing to* Ex. B, second amended complaint.  Plaintiff Halpin contends he "suffered a staph infection, severe chest pains, dizziness, sweating, and severe back pain caused by Defendants' retaliation . . . . " *Id.*, at 4.  Plaintiffs claim Defendants were attempting "to cause" Plaintiff Donald Halpin "to suffer a fatal heart attack and/or severe physical pain."  Doc. 135, p. 4.

Plaintiffs' second amended complaint does not present any allegations of physical injury caused by the RICO allegations (kickback schemes, extortion and bribery), the equal protection claim, the ex post facto claim, or the Government in the Sunshine law claim.  Plaintiffs' retaliation claim is the only claim mentioning any physical injury at all.  Doc. 90, p. 31.  Consequently, Defendants David, Dunphy, Pate, Summers, Keels, and McNeil would be entitled to an order dismissing any claim for mental or emotional injuries with respect to the RICO claim (kickback schemes, extortion and bribery), the ex post facto claim, and the Government in the Sunshine law claim.

The court need not so rule, however, as the federal claims fail for multiple reasons as explained in this report and recommendation and two others entered today, and the court should not exercise jurisdiction over the state law claim.  As will be discussed ahead, the equal protection and retaliation claims are lodged only against Defendants Boyd, West, and Spittler.  A separate report and recommendation is

entered today recommending that these claims (equal protection and retaliation) against Boyd, West, and Spittler be dismissed for failure to exhaust administrative remedies.  It is recommended, therefore, that the court make no ruling as to the "physical injury" requirement of 42 U.S.C. § 1997e(e).

### The RICO Claim

Defendants contend that Plaintiffs have failed to state a viable RICO claim because Plaintiffs fail to allege fraud with the particularity required under Rule 9(b).  Doc. 105, p. 6.  Defendants further assert that "Plaintiff's claims of extortion, bribery, conspiracy and retaliation are likewise deficient."  *Id.*  Defendants argue that Plaintiffs do not provide "sufficient factual allegation[s]" to support any of those claims and, moreover, fails to allege that any Plaintiff was "approached by any of the Defendants about paying a bribe for favorable parole/clemency consideration."  *Id.*, at 6-7.  Defendants point out that Plaintiffs provide no factual allegations which demonstrate a conspiracy.  *Id.*, at 7.  Finally, Defendants contend that Plaintiffs do not allege the requisite standing necessary to support the RICO claim because Plaintiffs do not allege direct injuries.

### Standing

RICO's private right of action, contained in 18 U.S.C. § 1964(c), provides in relevant part that a "person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit . . , including a reasonable attorney's fee."  To recover under the civil RICO provisions, Plaintiffs' injury must "flow from the commission of the predicate acts."  Sedima v. Imrex Co., Inc., 473 U.S. 479, 497, 105

S.Ct. 3275, 3285 (1985), *quoted in* Pelletier v. Zweifel, 921 F.2d 1465, 1497 (11th Cir. 1991).  Thus, to have standing, Plaintiffs must show injury and it must be a direct injury, not an indirect injury, and must be proximately caused by the violation.  Byrne v. Nezhat, 261 F.3d 1075, 1110 (11th Cir. 2001).  *See also* Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 266-268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (concluding that § 1964(c)'s "by reason of" language required a plaintiff to show that the defendant's RICO violation not only was a "but for" cause of his injury, but was the proximate cause as well).  Plaintiffs must show they have "been injured in [their] business or property by the conduct constituting the violation."  Sedima, 473 U.S. at 496, 105 S.Ct. at 3285, *quoted in* Pelletier, 921 F.2d at 1499.

The civil RICO provision was not "meant to allow all factually injured plaintiffs to recover."  Holmes, 503 U.S. at 266, 112 S.Ct. 1311, *explained in* Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 456, 126 S.Ct. 1991, 1996, 164 L.Ed.2d 720 (2006).  "The direct-relation requirement avoids the difficulties associated with attempting to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. . . ."  Holmes, 503 U.S., at 269, 112 S.Ct. 1311, *explained in* Bridge v. Phoenix Bond & Indem. Co., __ U.S. __, 128 S.Ct. 2131, 2142, 170 L.Ed. 2d 1012 (2008).  Thus, there must be a "direct relation between the injury asserted and the injurious conduct alleged" and not just that the injury would not have occurred "but for" the violation.  Anza, 547 U.S. at 457, 126 S.Ct. at 1996.  The issue is whether the injury was directly caused by the RICO violation, not whether the injury was reasonably foreseeable.  Bivens Gardens Office Bldg. v. Barnett Banks of Fla., 140 F.3d 898, 908 (11th Cir. 1998); Byrne, 261 F.3d at 1110.

Plaintiffs' RICO claims against these Defendants are limited to the allegation of bribery to obtain a favorable parole decision.  Doc. 90.  Plaintiffs allege, however, that they did not pay any bribes.  Although Plaintiffs allege that they paid attorney's fees to David Collins to represent Plaintiff Halpin and paid related expenses for Plaintiff's family to attend clemency and parole hearings, doc. 90, p. 15, there are no allegations that these routine expenses were proximately cause by any illegal conduct of the Defendants.  There are no plausible allegations that they incurred these expenses because a bribe was demanded.  Indeed, there are no allegations that any Defendant specifically demanded a bribe.  Prisoners often hire attorneys to represent them in parole matters.  The motion to dismiss as to the RICO claim should be granted and that claim dismissed for lack of standing.

**Failure to State a Claim**

Even if Plaintiffs could allege standing, the RICO claim still fails.  Under § 1962, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  "The term 'racketeering activity' is defined to include a host of so-called predicate acts . . . ."  Bridge v. Phoenix Bond & Indem. Co., 128 S.Ct. at 2138.  These predicate acts must be sufficiently alleged to present a viable claim.

Plaintiffs must demonstrate four elements to present a civil RICO claim under 18 U.S.C. § 1962(c), (d):[3]  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1311 (11th Cir. 2000), *citing* Durham v. Business Management Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988).  Racketeering activity is defined under 18 U.S.C. § 1961 to include "a lengthy list of criminal offenses" as predicate acts.  Langford, 231 F.3d at 1312; *see also* 18 U.S.C. § 1961.  That list includes offenses such as murder, kidnaping, gambling, arson, robbery, bribery, extortion, mail fraud, wire fraud and counterfeiting.  A "pattern of racketeering activity" is defined as "two predicate acts" of racketeering activity within ten years.  Langford, 231 F.3d at 1311-12; *see also* 18 U.S.C. § 1961(5).  Plaintiffs do not allege two predicate acts of bribery or extortion against these Defendants.  Indeed, there are no allegations specifying any date or circumstances when a bribe was demanded by any Defendant.

In response to the motion to dismiss, Plaintiffs assert that the first attorney they hired (Mr. Daley) told them that they would need to save money to pay a bribe, but even if Plaintiffs could prove this serious allegation, the allegation fails to allege specifically

---

[3] Those provisions state:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c), (d).

Case No. 4:06cv457-RH/WCS

what a *named Defendant* did or did not do.  Doc. 135, p. 11.  Plaintiffs also *suggest* in

their reply that others have provided bribes or monetary enticements for others to be

released from prison, *see* doc. 135, pp. 15-18, but that is not sufficient to state a claim

against the *Defendants* in this case.  While it *suggests* that one or more commissioners

were engaged in such a practice, it fails to point to a particular person, named as a

Defendant, who committed such an act.  Parole Commissioners are not jointly

responsible for the improper actions of one person, nor may they be held liable for the

conduct of another.  Plaintiffs have failed to allege sufficient facts to show that

Defendants David, Dunphy, Pate, Summers, Keels, or McNeil committed the act of

bribery with respect to the performance of their official duties.

Plaintiffs broadly contend that Defendants David, Dunphy, Pate, Summers,

Keels, and McNeil deprived them of fair and honest services, misused their offices, and

relied upon false or misleading information in making parole decisions.  Doc. 135, pp. 8-

19.  Those broad and unsupported allegations are insufficient to state a claim under

RICO, and also insufficient to meet the demands of Rule 9.  "Civil RICO claims, which

are essentially a certain breed of fraud claims, must be pled with an increased level of

specificity."  Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th

Cir. 2007), *citing* Fed.R.Civ.P. 9(b); Brooks v. Blue Cross and Blue Shield of Florida,

Inc., 116 F.3d 1364, 1380-81 (11th Cir.1997).  In a case like this, with multiple

Defendants, a complaint must "inform each defendant of the nature of his alleged

participation in the fraud."  Ambrosia Coal & Const. Co., 482 F.3d at 1317, *quoting*

Brooks, 116 F.3d at 1381.  A properly pled complaint cannot simply lump together all

Defendants in general allegations of fraud.  Ambrosia Coal & Const. Co., 482 F.3d at

1317.  Moreover, "[w]hen a RICO claim is based on predicate acts involving fraud, those

predicate acts must be pleaded with particularity, in accordance with Fed.R.Civ.P. 9(b)."

Liquidation Com'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1355 (11th

Cir. 2008).  Plaintiffs do not provide particular, discrete facts, much less identify any

specific dates or times, as required by Rule 9,[4] to state the predicate acts of bribery,

mail fraud, or wire fraud against these Defendants.  *See* American United Life Ins. Co.

v. Martinez, 480 F.3d 1043, 1067 (11th Cir.), *cert. denied*, 128 S.Ct. 491 (2007).

Plaintiffs' second amended complaint fails to meet these requirement as Plaintiffs simply

lump the Defendants together to make a broad allegation of wrong-doing.

Plaintiffs' allegations here contain "only the barest of conclusory allegations

without notice of the factual grounds on which they purport to be based.  Jackson v.

BellSouth Telecommunications, 372 F.3d 1250, 1271 (11th Cir. 2004).  The second

amended complaint lacks specific factual allegations which put Defendants on notice as

required by FED. R. CIV. P. 8, and wholly fails to provide the more particular allegations

which are required for claims of fraud as mandated by FED. R. CIV. P. 9(b).

> "The particularity rule serves an important purpose in fraud actions by
> alerting defendants to the 'precise misconduct with which they are
> charged' and protecting defendants 'against spurious charges of immoral
> and fraudulent behavior.' "  *Durham v. Bus. Management Assocs.*, 847
> F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v.
> Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  The
> application of Rule 9(b), however, "must not abrogate the concept of
> notice pleading."  *Id.*  Rule 9(b) is satisfied if the complaint sets forth "(1)

---

[4] In general, a pleading need only contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."  American United Life Ins. Co. v.
Martinez, 480 F.3d 1043, 1066-1067 (11th Cir. 2007), *quoting* FED. R. CIV. P. 8.  "If the
claim alleges fraud, however, . . . Rule 9(b) dictates that 'the circumstances constituting
fraud or mistake shall be stated with particularity.' "  American United Life Ins. Co., 480
F.3d at 1067 (11th Cir. 2007), *quoting* Fed.R.Civ.P. 9(b).

precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted).

Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). Rule 9 is not satisfied by Plaintiffs' generalities.

Thus, in addition to lack of standing, the motion to dismiss the RICO claims should also be granted because the complaint fails to state a claim upon which relief may be granted and fails to allege facts with particularity as required by Rule 9. Having failed to sufficiently allege predicate acts to support a RICO claim, Plaintiffs have also failed to allege a conspiracy claim under RICO.

**Equal Protection claim**

Defendants argue that Plaintiffs' Fourteenth Amendment claims are insufficient because he does not allege that he suffered discrimination based on "race, religion, national origin, or some other constitutionally protected basis." Doc. 105, pp. 7-8. Defendants further point out that the allegations concerning the equal protection violations occurred on March 6, 2007, and in the days following, but there are no allegations that Plaintiff Donald Halpin was subsequently considered for parole or clemency such that he could have been treated differently from other prisoners. *Id.*, at 8-9. Moreover, Defendants point out that the equal protection claim only concerns the actions of Defendants Boyd, West, and Spittler, and there are no allegations against the other named Defendants.

Plaintiffs allege that Plaintiff Halpin was not treated the same as other inmates because of his writ writing and his litigation efforts.  Doc. 90, pp. 24-27.  The complaint specifically details actions by Boyd, West, and Spittler occurring on and after March 6, 2007.  *Id.*  The complaint alleges that Plaintiff was "denied favorable parole/clemency hearings" since he "refused to pay the required bribes and is considered a prison writ writer . . . ."  *Id.*, at 27.  Plaintiffs allege that "Defendant Boyd, West, Spittler, and known and unknown FPC, Clemency Office, and FDOC Tallahassee officials" have denied him equal protection of the law.  *Id.*

The attorney who filed this motion to dismiss states that Boyd, West, and Spittler "are apparently unserved and the undersigned does not waive service on these Defendants, however, asserts that Plaintiff's allegations are insufficiently pled."  Doc. 105, p. 8.  A motion to dismiss for failure to state a claim upon which relief may be granted is a motion going to the merits.  Hall v. Tower Land and Investment Co., 512 F.2d 481, 483 (5th Cir. 1975).  The court cannot rule on the merits if counsel does not wish to waive service for Boyd, West, and Spittler.  Roden v. Diah, 2008 WL 5334309 (W.D. Va. Dec 19, 2008) (No. CIV. A. 7:07CV00252), *aff'd*, 2009 WL 1484110 (4th Cir. May 28, 2009) (not selected for publication in the Federal Reporter, NO. 09-1088), *Petition for Certiorari Filed* (Jun 13, 2009)(NO. 08-10912).

An attorney for Boyd, West, and Spittler subsequently entered an appearance for them and filed motions to dismiss.  That will be the subject of another report and recommendation.  It will be recommended that the equal protection claim against Boyd, West, and Spittler be dismissed for failure to exhaust administrative remedies.

There is no equal protection claim made against Defendants David, Dunphy,
Pate, Summers, Keels, and McNeil because there are no allegations that they did or did
not do anything and because there are no allegations that Plaintiff should have been
considered for parole since March 6, 2007.  The motion to dismiss this claim should be
denied for this reason.

**Retaliation claim**

Defendants Boyd, West, and Spittler seek dismissal of the retaliation claim as
well, but without waiving the requirement of service as to Defendants Boyd, West, and
Spittler.  Doc. 105, p. 9.  The court cannot reach the merits of this motion to dismiss for
the reasons set forth immediately above.

An attorney for Boyd, West, and Spittler subsequently entered an appearance for
them and filed motions to dismiss.  That will be the subject of the next report and
recommendation.  It will be recommended that the retaliation claim against Boyd, West,
and Spittler be dismissed for failure to exhaust administrative remedies.

Plaintiffs have not alleged any retaliation claim against Defendants David,
Dunphy, Pate, Summers, Keels, and McNeil because they have not alleged that these
specific Defendants did or did not do anything to retaliate against him.  Doc. 90, pp. 27-
34.  The motion to dismiss should be denied for this reason.

**Ex Post Facto claim**

While Plaintiff has not specifically alleged the nature of his sentence, it is
judicially noted from the Department of Corrections website[5] that Plaintiff is serving a life
sentence for first degree premeditated murder committed on May 30, 1980.  The

_____

[5] The website is found at:  http://www.dc.state.fl.us/ActiveInmates/

allegation in the second amended complaint is that at some unspecified date, the

Florida Parole Commission investigated a recommendation from the Department of

Corrections to the Governor's Clemency Office to commute Plaintiff's life sentence.

Doc. 90, p. 35.  It is further alleged that the Commission "alleged that a waiver of the

rules should be denied for Inmate Halpin, notwithstanding no waiver was needed."  *Id.*

Then, in 2004 when Plaintiff was again considered for clemency, the Commission was

notified by Plaintiff that "they had erred during Inmate Halpin's first clemency hearing by

forcing him to obtain a waiver of the rules from three Florida Cabinet members when no

waiver was required under Executive Clemency Rule 11C(3), and Rule 4."  *Id.*  The

complaint states that unidentified Defendants advised Plaintiff that he misunderstood

Rule 11C and a waiver was needed, "notwithstanding that the FDOC submitted his

name for a reasonable commutation of his life sentence."  *Id.*, at 35.  Plaintiff asserts

that he was "disadvantaged by having to obtain a waiver from three Florida Cabinet

members . . . instead of having his case sent to the Governor for a reasonable

commutation of his life sentence."  *Id.*  The complaint alleges "Defendants acted as

employees, supervisors, and final policy makers for the Clemency Office and the FPC

[Florida Parole Commission]."  *Id.*, at 36.

Defendants contend "Plaintiff fails to state any valid ex post facto claim relevant

to procedural changes in the Rules of Executive Clemency."  Doc. 105, p. 10.  In

support, Defendants cite to <u>Wade v. Singletary</u>, 696 So.2d 754, 755 (Fla. 1997)

(granting motion to dismiss a petition for writ of mandamus concerning a challenge to

certain waiver provisions in the Rules of Executive Clemency on ex post facto grounds).

In response, Plaintiff explains that his first clemency hearing was in 1992.[6]  Doc. 135, pp. 23-24.  Plaintiffs claim that Donald Halpin did not need a waiver of clemency rules at that time.  *Id.*, at 23-24.  Plaintiffs contend that "Defendants cannot enact new administrative rules and procedures that disadvantage Inmate Halpin that were not in effect at the time of this crime . . . ."  *Id.*, at 25.  Plaintiffs also argue that <u>Dugger v. Williams</u>, 593 So.2d 180 (Fla. 1991), shows that Plaintiff has a valid ex post facto claim. Doc. 135, p. 24.

To further explain his claim, Plaintiff has submitted a copy of the Rules of Executive Clemency updated to September 14, 1977.  Doc. 135, Ex. F (95)-(102); doc. 135-4 on ECF, pp. 20-27.  This evidence is not considered here for purposes of converting the motion to dismiss to a motion for summary judgment, but to try to understand Plaintiff's *pro se* claim.  Paragraph 11 provided in relevant part that a person sentenced to life in prison who had served ten years, sustained no charge of misconduct, had a good institutional record, and "has been recommended by the Secretary of the Department of Offender Rehabilitation [the former name of the Department] for a commutation of sentence," would be eligible to file an application to be placed upon the agenda of the Governor and Cabinet at the next Clemency meeting, assuming that the Parole Commission had "made a thorough investigation and study of the case, and made a recommendation to the Governor and Cabinet."  Doc. 135, Ex. F (100)-(101); doc. 135-4 on ECF, pp. 25-26.  Paragraph 4 provided that:

---

[6] A claim concerning events from 1992 is clearly barred by the four-year statute of limitations.  Nevertheless, as that defense was not raised, the merits of this claim will be considered.  Furthermore, Plaintiff's second clemency hearing was in 2004.  Doc. 90, p. 35.

> Persons incarcerated, or otherwise ineligible to file an application under
> Rule 11, will not be considered for any form of Executive Clemency,
> unless a waiver is granted in accordance with Rule 14 or Clemency is
> recommended by the Secretary of the Department of Offender
> Rehabilitation, or by the Parole and Probation Commission.

Doc. 135, Ex. F (96); doc. 135-4 on ECF, p. 21.  Paragraph 14 provided that if a person

"cannot meet the requirements of the rules and wishes to have an application for

Clemency considered, the applicant may petition the Governor and Cabinet by letter for

a waiver of the rules.  A waiver may only be granted by the Governor with the approval

of three members of the Cabinet."  Doc. 135, Ex. F (101); doc. 135-4 on ECF, p. 26.

Plaintiff has also submitted evidence that on March 13, 1992, Governor Chiles

wrote to Plaintiff Halpin to advise him that: "The Rules of Executive Clemency provide

that persons incarcerated in prison may not be heard for clemency unless a waiver of

the rules is granted by the Governor and two members of the Cabinet, and such waivers

are not often granted."  Doc. 135, Ex. C (92); doc. 135-4 on ECF, p. 17.  On August 3,

1992,  the Office of Executive Clemency advised Plaintiff that it was "not necessary for

you to submit an application/waiver request since the DOC recommendation is being

considered as a waiver application just as though you had sent it in yourself."  Doc. 135,

Ex. C (91); doc. 135-4 on ECF, p. 16.  On May 25, 1993, Plaintiff was advised that he

did not receive the "requisite number of waivers."  Doc. 135, Ex. C (93); doc. 135-4 on

ECF, p. 18.

The Ex Post Facto Clause prohibits States from making laws "which, by

retroactive operation, increase the punishment for a crime after its commission."

Garner v. Jones, 529 U.S. 244, 249, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (2000).

While retroactive changes may, in some instances, violate this Clause, "not every

retroactive procedural change" creates a valid ex post facto claim.  *Id.*, at 250, 120 S.Ct. at 1367.  The determinative question is "whether retroactive application of the change in [the state] law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.' "  *Id.* (quoting California Dept. of Corrections v. Morales, 514 U.S. 499, 509, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995) (holding that a California law did not violate the Ex Post Facto clause because it created only an insignificant risk that covered inmates would suffer increased punishment)).  It is Plaintiffs' burden to "show that as applied to his own sentence the law created a significant risk of increasing his punishment."  Garner, 529 U.S. at 255, 120 S.Ct. at 1370.

Dugger v. Williams, *supra*, was decided in 1991.  In that case, the prisoner had been sentenced to life in prison for a first degree murder committed in 1976.  593 So. 2d at 181.  The prisoner claimed that pursuant to FLA. STAT. § 944.30 (1975), which existed when he committed his offense, he was entitled to a receive a mandatory recommendation for executive clemency from the Department of Corrections.  *Id.*  That statute had provided:

> Any prisoner who is sentenced to life imprisonment, who has actually served 10 years and has sustained no charge of misconduct and has a good institutional record, *shall be recommended* by the [DOC] for a reasonable commutation of his sentence . . . to a term for years, then such prisoner shall have the benefit of the ordinary commutation, as if the original sentence was for a term [of] years, unless it shall be otherwise ordered by the Board of Pardons.

*Id.*, at 182 (emphasis by the court).  The statute was amended in 1986 to provide that a person sentenced to in excess of 40 years "for a noncapital felony and who has served 10 calendar years of such sentence with the cumulative loss of no more than 30 days of

gain-time may be recommended by the Secretary of Corrections for an investigation

pursuant to s. 947.25." *Id.* (emphasis by the court).  Since the prisoner had been

convicted of a capital felony, it would seem that the 1986 version of the statute did not

apply to him at all.  The court noted this complication, and then noted that the Rules of

Executive Clemency had been amended in 1985, a factor revealed in oral argument.  *Id.*

Summarizing the situation of the prisoner before the court, the court said:

> Under both the pre-1986 statute and the pre-1985 Rules submitted to this
> Court by DOC, it appears that Williams would have received the following
> upon meeting the conditions of section 944.30: (a) DOC's mandatory
> recommendation for commutation of sentence, § 944.30, Fla.Stat. (1975);
> (b) an investigation by the Parole and Probation Commission; and (c)
> eventual placement on the agenda of the Executive Clemency hearing.
> Fla.Admin.Code Ann. tit. 27 app.

*Id.*  The court then noted that under the new Executive Clemency rule,

> the DOC recommendation for a commuted sentence remains a necessary
> element before Williams' case can be heard by the Governor and Cabinet
> under the provisions of section 944.30.  However, in addition, Williams
> must obtain a waiver from the Governor and at least three members of the
> Cabinet. Without both the DOC recommendation and the waiver, there is
> no possibility of Williams obtaining either a hearing or a commutation of
> his sentence under section 944.30. Fla.R.Executive Clemency 11(C)(3)
> (not published in Fla.Admin.Code).

*Id.*  In other words, prisoner Williams in that case was in exactly the same situation as

Plaintiff Halpin here.

> The court concluded:

> Thus, no matter which of these clemency rules is applicable, we must find
> that an ex post facto violation exists.  Read together, the applicable
> statutes and both versions of the Rules of Executive Clemency clearly
> contemplate that Williams has no possibility whatsoever of obtaining the
> hearing provided by section 944.30 before the Governor and Cabinet-and
> thus no possibility of a commuted sentence pursuant to the statutory
> mechanism-unless he at least obtains the DOC recommendation
> promised him by the pre-1986 version of section 944.30.

> This plainly is a substantial substantive disadvantage that is being retrospectively applied to Williams, in violation of Florida law. Art. I, § 10, Fla. Const.; *see Waldrup*.  Indeed, it is directly analogous to the denial of access to the gain-time procedure that occurred in *Waldrup*.  Accordingly, on remand, the trial court shall determine if Williams met the requirements of the pre-1986 version of section 944.30.  *If so, then Williams is entitled to mandamus ordering DOC to comply with the statute*.  Art. I, § 10, Fla. Const.

*Id.* (emphasis added).  In other words, the court answered only the question certified to it.  It determined that if the prisoner met the requirements of the earlier statute, he was entitled to have the Department of Corrections recommend that he be granted clemency.  The court did not address the change in the Clemency Rules, requiring a waiver approved by the Governor and three Cabinet Members, as such.

The Ex Post Facto question left undecided in Dugger v. Williams was decided in Wade v. Singletary in 1997.  Wade was convicted of first degree murder committed in 1975 and sentenced to life imprisonment.  696 So. 2d at 755.  The court said: "As relevant here, the Rules of Executive Clemency in effect at that time provided that if DOC recommended that an inmate's sentence be commuted, then that inmate's clemency application would eventually be placed on the Clemency Board's agenda for consideration," and in 1986, the Department of Corrections made such a recommendation.  *Id.*

The court then explained:

> In the interim, however, the Rules of Executive Clemency were amended in 1985 to require an extra step: namely, that any inmate applying for a commutation of sentence must obtain a waiver of the rules of eligibility to apply for clemency. [FN3]  As recently and succinctly summarized by the First District Court of Appeal:
>
> > Prior to 1985, such a waiver was unnecessary.  Upon receipt of a recommendation for sentence commutation from the

[DOC], applications for commutation of sentence which were in accordance with the clemency rules were referred to the Parole Commission for investigation, study and recommendation to the Clemency Board and were eventually placed on the Board's agenda.  *See Dugger v. Williams*, 593 So.2d 180, 182 (Fla.1991).  In 1985, the clemency rules were changed to require a petitioner seeking commutation of an active sentence to obtain a waiver of the clemency rules before the matter could be placed on the Clemency Board's agenda.  *See id.  Rodriguez v. Chiles*, 694 So.2d 53, 54 (Fla. 1st DCA 1997) (footnote omitted).  Accordingly, Wade later requested waiver in 1991, but his request (and, therefore, clemency itself) was denied despite the Florida Parole Commission's recommendation that waiver be granted in Wade's case.

> FN3. Specifically, rule 5 of the Rules of Executive Clemency now provides in pertinent part that "[a] person may not be considered for a commutation of sentence unless he or she has been granted a waiver pursuant to Rule 8." In turn, rule 8 of the Rules of Executive Clemency now provides in pertinent part that "[a] waiver of the rules may only be granted by the Governor with the approval of two members of the Cabinet."

696 So. 2d at 755-756.

After trying again to obtain a waiver of the rule in 1995, the prisoner, Wade, brought suit claiming that the application of the waiver rule violated ex post facto principles.  *Id.*, at 756.  The court noted that the argument had been rejected by the First District Court of Appeals in Rodriguez v. Chiles, 694 So. 2d 53 (Fla. 1st DCA 1997), and quoted the following reasoning from Rodriguez with approval:

[T]he challenged [1985 clemency] rule amendment does not impose a constitutionally objectionable condition on the [petitioner's] access to consideration by the Board of Executive Clemency.  *The plaintiff was considered for clemency during the waiver proceedings, and the merits of his case were reviewed by the Parole Commission and by the Governor and cabinet prior to the denial of the waiver by the Governor and cabinet.*

> The [petitioner] has not been denied consideration for clemency by the
> [1985] amendment to the [Clemency] Rules.  The waiver requirement
> added by Rule 5B., Rules of Executive Clemency, and described in Rule
> 8, Rules of Executive Clemency, is simply a change in the procedure by
> which the Board grants a hearing with personal appearance by the inmate
> or his representative before the Clemency Board, similar to the granting of
> oral argument by an appellate court.  Because no substantive rights of the
> [petitioner] were diminished, the Rules are not ex post facto rule
> amendments.

696 So. 2d at 756, *quoting*, 694 So. 2d at 55 (emphasis added).

This reasoning is plainly correct.  Plaintiff was recommended for clemency by the
Department of Corrections  Even though the procedure now is to obtain waivers,
Plaintiff's request for clemency was considered.  The procedure still allows for a
consideration of the merits of Plaintiff's application by the Governor and Cabinet
members who ultimately will decide whether or not to grant clemency.  Plaintiff has not
shown that the new procedure to obtain "waivers" has caused "a significant risk of
increasing his punishment."  Garner, 529 U.S. at 255, 120 S.Ct. at 1370.  Thus, Plaintiff
has failed to state a claim upon which relief may be granted and the motion to dismiss
the ex post facto claim should be granted.

**Government in the Sunshine claim**

Defendants contend that because Plaintiffs failed to raise cognizable claims, this
Court "should decline to exercise jurisdiction over the Plaintiff's state law claims as
explained in the Magistrate's Report and Recommendation."  Doc. 105, p. 11, *citing*
doc. 68, p. 17).  Plaintiffs briefly respond that they have stated a valid cause of action
and this Court should retain jurisdiction over their state law claim.  Doc. 135, p. 25.

In my earlier report and recommendation, doc. 68, I concluded that the "Florida
Government in the Sunshine claim [was] not 'so related' to [the] remaining RICO claim

(assuming it survives another motion to dismiss) that this court should adjudicate it."

*Id.*, at 17.  It was recommended that because the state law claim was "firmly rooted in

Florida law," it should "more properly" be decided by a Florida court.  *Id.*  Three reports

and recommendations are entered today, and if adopted, all federal claims will be

dismissed.  The court should not retain jurisdiction over this state law question.

**Conclusion**

Accordingly, it is **RECOMMENDED** that the motion to dismiss, doc. 105, filed by

Defendants David, Dunphy, Pate, Summers, Keels, and McNeil, be granted and denied

as follows:

1.  Be **GRANTED** as to the RICO claim against all Defendants because Plaintiffs

fail to allege claims of fraud with particularity as required by FED. R. CIV. P. 9(b), fail to

state a claim upon which relief may be granted, and because Plaintiffs fail to allege

standing;

2.  Be **GRANTED** as to the Ex Post Facto claim against because Plaintiffs fail  to

state a claim upon which relief may be granted;

3.  Be **DENIED** as to the equal protection and retaliation claims because those

claims are only lodged against Boyd, West, and Spittler and those Defendants had not

accepted service of process when the motion to dismiss was filed;

4.  And be **GRANTED** as to the state law claim for a violation of the Government

in the Sunshine law if this and the other two reports and recommendations are adopted.

It is further **RECOMMENDED** that  If all three reports and recommendations are

adopted, all claims will have been dismissed and the Clerk should be directed to enter

judgment accordingly.

**IN CHAMBERS** at Tallahassee, Florida, on July 9, 2009.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.