IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ANA CECILIA HALPIN,
FRANK EDWARD SWANSON,
and DONALD EUGENE HALPIN,

    Plaintiff,

vs.   Case No. 4:06cv457-RH/WCS

MONICA DAVID,
EDWARD L. DUGGER et al.,

    Defendants.

_____/


**REPORT AND RECOMMENDATION,
MOTIONS TO DISMISS,
DOC. 126, DEFENDANT DUGGER, and
DOC. 173, DEFENDANT CLARK**

    Defendant Edward L. Dugger filed a motion to dismiss Plaintiffs' second amended complaint. Doc. 126. Plaintiffs filed a response. Doc. 147. Defendant Dugger was permitted to file a reply. Doc. 149.

    Defendant Allen Clark also filed a motion to dismiss. Doc. 173. Plaintiffs filed a response. Doc. 177.

    The only claim against Dugger and Clark is the RICO claim. This claim has previously been considered with respect to Defendants Crosby and Alcorn. Docs. 174

(report and recommendation as to Crosby), and 178 (order adopting as to Crosby); 183 (report and recommendation as to Alcorn), 193 (order adopting as to Alcorn). The same result is warranted here.

**Analysis**

### Failure to comply with FED. R. CIV. P. 21 and obtain court approval

Defendant Dugger notes that when Plaintiffs were granted leave to amend the complaint, they were not granted "leave to amend to add a party who was not previously named as a defendant." Doc. 126, p. 2. Defendant argues that Plaintiffs were allowed to amend "in order to more adequately allege what property they lost and how they lost it with respect to their claim under the Racketeer Influenced and Corrupt Organizations Act ('RICO'), 18 U.S.C. § 1961m, *et seq.*" *Id.*, at 1-2. They were not granted "leave to amend with respect to any other matters." *Id.*, at 2. The court need not rule on this issue as the RICO claim simply should be dismissed.

### Standing

RICO's private right of action, contained in 18 U.S.C. § 1964(c), provides in relevant part that a "person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit . . , including a reasonable attorney's fee." To recover under the civil RICO provisions, Plaintiffs' injury must "flow from the commission of the predicate acts." Sedima v. Imrex Co., Inc., 473 U.S. 479, 497, 105 S.Ct. 3275, 3285 (1985), *quoted in* Pelletier v. Zweifel, 921 F.2d 1465, 1497 (11th Cir. 1991). Thus, to have standing, Plaintiffs must show injury and it must be a direct injury, not an indirect injury, and must be proximately caused by the violation. Byrne v.

Nezhat, 261 F.3d 1075, 1110 (11th Cir. 2001). *See also* Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 266-268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (concluding that § 1964(c)'s "by reason of" language required a plaintiff to show that the defendant's RICO violation not only was a "but for" cause of his injury, but was the proximate cause as well). Plaintiffs must show they have "been injured in [their] business or property by the conduct constituting the violation." Sedima, 473 U.S. at 496, 105 S.Ct. at 3285, *quoted in* Pelletier, 921 F.2d at 1499.

The civil RICO provision was not "meant to allow all factually injured plaintiffs to recover." Holmes, 503 U.S. at 266, 112 S.Ct. 1311, *explained in* Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 456, 126 S.Ct. 1991, 1996, 164 L.Ed.2d 720 (2006). "The direct-relation requirement avoids the difficulties associated with attempting to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. . . ." Holmes, 503 U.S., at 269, 112 S.Ct. 1311, *explained in* Bridge v. Phoenix Bond & Indem. Co., __ U.S. __, 128 S.Ct. 2131, 2142, 170 L.Ed. 2d 1012 (2008). Thus, there must be a "direct relation between the injury asserted and the injurious conduct alleged" and not just that the injury would not have occurred "but for" the violation. Anza, 547 U.S. at 457, 126 S.Ct. at 1996. The issue is whether the injury was directly caused by the RICO violation, not whether the injury was reasonably foreseeable. Bivens Gardens Office Bldg. v. Barnett Banks of Fla., 140 F.3d 898, 908 (11th Cir. 1998); Byrne, 261 F.3d at 1110.

Plaintiffs' claims against Defendant Dugger and Clark are limited to Count 1, the RICO claim. Defendant Dugger is alleged to be "the CEO and President of American Institutional Services, Inc." [hereinafter AIS]. Doc. 90, pp. 5, 10. Defendant Clark is

alleged to have been the Regional Director of Region I. *Id.*, pp. 4, 9. Plaintiffs allege Defendant Dugger's involvement is in "arranging visiting park commissary contracts between AIS and the" Department of Corrections, "including the arrangement of bribes to Defendants Crosby and Clark in exchange for the FDOC Commissary contract." *Id.*, at 10.

Plaintiffs allege that Defendants Dugger and Clark "engaged and/or conspired with" other Defendants in a scheme to defraud Plaintiffs and others. *Id.*, at 13. Defendants Dugger and Clark, along with Defendants Alcorn, Henry, and Crosby, allegedly facilitated and negotiated contracts between the Department of Corrections, Keefe, and AIS "to receive cash kickbacks for awarding the FDOC commissary contract to Keefe and AIS" and "used the U.S. Mail and wire services for fraudulent pretense. . . ." *Id.*, at 16. Defendants Dugger and Clark, and others, are alleged to have received cash kickbacks under the AIS contracts. *Id.* Defendants Alcorn and Dugger sent bids for contracts to the Department of Corrections in the mail, and allegedly corresponded between each other "for the sole purpose of arranging bribery payments in exchange for the FDOC commissary contracts . . . ." *Id.*, at 21.

Thus, as alleged by Plaintiffs, the RICO violations pertaining to Defendants Dugger and Clark are, *inter alia*, that they committed mail fraud when sending a contract bid to the Department of Corrections and committed wire fraud when corresponding with other persons to arrange bribery payments in exchange for the commissary contracts. The alleged resulting harm to Plaintiffs is "approximately $2,000 in excessive canteen purchases by Plaintiffs Mrs. Halpin and Inmate Halpin between

February 2004 through October 2007, due to the loss of fair and honest services as a direct and proximate result of the Defendants RICO activities."  Doc. 90, p. 15.

As this court has already ruled with respect to Crosby, doc. 178, and Alcorn, doc. 193, despite Plaintiffs quotation of the relevant "direct and proximate" language, they have not sufficiently alleged that their injuries were *directly* caused by the alleged violations.  The alleged indirect result of the criminal activities of Dugger and Clark was excessive canteen prices.  However, the *direct* result was in loss of revenue to the Department, the State, and Keefe Commissary in the alleged kickbacks provided to Defendants Crosby and Clark, after the establishment of the contract.  The direct victim of this conduct was the State of Florida and the Department of Corrections, and perhaps even Keefe Commissary, but not Plaintiffs.  Further, fair market prices are fixed by a number of factors and subject to prevailing market conditions.  As noted by the Supreme Court, the direct harm requirement avoids the difficulties associated with attempting "to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. . . ."  Holmes, 503 U.S., at 269, 112 S.Ct. 1311.  Sales prices are established by the operation of many factors.

The alleged wire fraud did not directly affect Plaintiffs either as the arrangement and alleged payment of bribes[1] directly caused harm to the Department of Corrections and the State of Florida in the loss of revenue.  Any persons who might have purchased items within the canteens might have been affected, but this was indirect as explained above.  Plaintiffs' injuries are common to every person who has made canteen

---

[1] Plaintiffs allege that they did not pay any bribes and thus did not lose property by payment of a bribe.

purchases and are too attenuated to confer standing.[2] Because the harm alleged by Plaintiffs is not sufficient to show a direct harm, Plaintiffs were not harmed in any real or meaningful way and, thus, do not have injuries caused directly by the § 1962 violations. As Plaintiffs do not have standing to proceed on the claims against Defendants Dugger and Clark, the motions to dismiss should be granted.

Even if Plaintiffs could allege standing, the RICO claim still fails. This is an independent ground to grant the motion to dismiss. Under § 1962, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "The term 'racketeering activity' is defined to include a host of so-called predicate acts . . . ." Bridge v. Phoenix Bond & Indem. Co., 128 S.Ct. at 2138. These predicate acts must be sufficiently alleged to present a viable claim.

The prior report and recommendation, doc. 183, which concerned the related claims against Defendant Alcorn, found that Plaintiffs did not provide the "particular, discrete facts, much less identify any specific dates or times, as required by Rule 9, to state the predicate acts of bribery, mail fraud, or wire fraud against Defendant Alcorn." *Id.*, at 18. The court adopted this recommendation. Doc. 193. The same conclusion should be reached as to the claim against Defendants Dugger and Clark, as the claims are entirely intertwined with the claim brought against Defendant Alcorn. *See* doc. 90,

---

[2] Plaintiffs cannot argue in response that they are "third party beneficiaries" of the commissary contract, and then contend they are also "the direct victims, not third-party victims, to Defendants' racketeering scheme." Doc. 147, pp. 2-3.

pp. 13, 14, 16, and 21.  All of these Defendants, Alcorn, Clark, and Dugger, are alleged to have acted together in arranging bribery payments for the commissary contracts. However, as found previously, Plaintiffs present only the barest of conclusory allegations and fails under F$_{ED}$. R. C$_{IV}$. P. 9(b).  *See* doc. 183, pp. 18-19.  Having failed to sufficiently allege the predicate acts necessary to state a claim, it is correspondingly true that there can be no showing of a pattern of racketeering activity.  Defendant Dugger's motion to dismiss, doc. 183, must be granted.

**Conclusion**

Accordingly, it is **RECOMMENDED** that the motion to dismiss, doc. 126, filed by Defendant Edward L. Dugger, and doc. 173, filed by Defendant Allen Clark, be **GRANTED** as to the RICO claim fails because it does not allege claims of fraud with particularity as required by F$_{ED}$. R. C$_{IV}$. P. 9(b), it fails to sufficiently allege the predicate acts necessary for a RICO claim and, thus, fails to state a claim upon which relief may be granted, and that the complaint as to Dugger and Clark be **DISMISSED**.  If all three reports and recommendations are adopted, all claims will have been dismissed and the Clerk should be directed to enter judgment accordingly.

**IN CHAMBERS** at Tallahassee, Florida, on July 9, 2009.

                                         s/    William C. Sherrill, Jr.
                                         **WILLIAM C. SHERRILL, JR.**
                                         **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**