**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ANA CECILIA HALPIN,
FRANK EDWARD SWANSON,
and DONALD EUGENE HALPIN,**

 **Plaintiff,**

vs.           Case No. 4:06cv457-RH/WCS

**MONICA DAVID, CONNICE WEST,
MS. SPITTLER, et al.,**

 **Defendants.**

_____/

**REPORT AND RECOMMENDATION,
MOTIONS TO DISMISS,
DOC. 131, DEFENDANTS WEST and SPITTLER,
and DOC. 152, DEFENDANT BOYD**

 Defendants West and Spittler filed a motion for summary judgment, or in the alternative, a motion to dismiss. Doc. 131. The motion was construed as a motion to dismiss and Plaintiffs directed to respond to the motion. Doc. 132. On November 21, 2008, Plaintiffs filed their reply, doc. 150.

 Defendant Boyd filed a motion for summary judgment, or in the alternative, a motion to dismiss. Doc. 152. The motion was construed as a motion to dismiss. Doc. 169. Plaintiffs filed a response. Doc. 176.

Defendant Connice West is alleged to have been employed by the Florida Department of Corrections, during the relevant time period, as the Chief Classification Officer at Wakulla Correctional Institution. Doc. 90, p. 5. Defendant Spittler was also employed by the Florida Department of Corrections and worked as a Sentencing Specialist at Wakulla Correctional Institution. *Id*. Defendant Boyd was "employed by the FCOC as the AWOP at Wakulla Correctional Institution." *Id*.

Plaintiff's second amended complaint raises three claims against these Defendants: (1) count 1 is a RICO claim under 18 U.S.C. § 1962; (2) count 2 is an equal protection claim; (3) and count 3 is a First Amendment retaliation claim. Doc. 90. The active version of the complaint in this case is Plaintiffs' second amended complaint, doc. 90.

**Analysis**

**Failure to exhaust under the PLRA as to the equal protection and retaliation claims**

All three Defendants contend that Plaintiff Donald Halpin did not "timely and properly exhaust" his equal protection and retaliation claims against Defendants West, Spittler, and Boyd. Defendants point out that the grievances Plaintiff attached to the complaint show that the only grievance filed concerning these Defendants was an informal grievance that was rejected "as untimely" because it was filed approximately one year after the claimed events. Defendants specifically note that Plaintiff's grievances concerning the First Amendment retaliation claim were untimely by one year.

In response to the motion to dismiss by Spittler and West, Plaintiffs argue that an informal grievance does not have a defined time limit in the rules.  Doc. 150, p. 2.  Plaintiffs advise that the rules provide only that an informal grievance must be filed within "a reasonable time to be determined by FDOC staff."  *Id.*  Plaintiffs also refer to an earlier response they filed (as to Defendant Crosby's motion to dismiss),[1] that Rule 33-103.001(4) specifies that the grievances system cannot be used to challenge parole decisions.  Doc. 108, p. 3.  In response to Boyd's motion to dismiss, Plaintiffs assert that Mrs. Halpin "filed a grievance letter to Mr. James McDonough, former Secretary of the FDOC, when Inmate Halpin was denied grievance forms while assigned to Columbia C.I."  Doc. 176, p. 1.

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a), *quoted in* doc. 68, p. 2. The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or Bivens. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  The exhaustion requirement of § 1997e(a) is not jurisdictional, however.  Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)).  There is no discretion to

---

[1] In my report and recommendation concerning that motion to dismiss, doc. 96, I noted that it appeared that the grievances concerning retaliation were untimely, but that Plaintiff's argument concerning having grievances sabotaged "could have some merit."  Doc. 174, p. 15.  Nevertheless, ruling was not made on the timeliness of the grievances concerning retaliation because the claim as to Defendant Crosby lacked merit.  *Id.*

waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons). The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing* Alexander, 159 F.3d at 1323. Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively. Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[2].

A prisoner must also comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In

---

[2] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of the grievance. See Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999)(noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373.  If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted. Brown, 212 F.3d at 1206, n.1; Jones, 549 U.S. at 223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

     Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), relying on Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative

defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. Id., at 1374-75.

The "grievance" by Mrs. Halpin to Secretary McDonough on April 27, 2007, did not present the substantive issues underlying the equal protection and retaliation claims, but only concerned the denial of grievance forms at Columbia Correctional Institution. Doc. 176, p. 1. West, Spittler, and Boyd were at Wakulla Correctional Institution. Even if this should be considered to be a grievance filed by Plaintiff Halpin, this grievance could not have grieved the substantive issues underlying the equal protection and retaliation claims.

Plaintiff submitted a lengthy five-page formal grievance, dated March 28, 2008, alleging retaliation by Wakulla C.I. officials for filing civil action pleadings and inmate grievances." Doc. 90, ex. A, pp. 38-42. Plaintiff complained of events from March 6, 2007, up through his transfer away from Wakulla C.I. on April 17, 2007. Id., at 38-41.[3]

---

[3] That grievance makes clear that Plaintiff left Wakulla Correctional Institution in mid-April, 2007, and arrived at Hardee Correctional Institution on May 15, 2007. Doc. 90, ex. A, pp. 41-42. The second amended complaint also alleged his transfer away

The grievance was returned without action because it was untimely.  *Id.*, at 37.  Plaintiff submitted another formal grievance, dated March 29, 2008, that alleged he had been retaliated "against by Wakulla C.I. officials for filing civil action pleadings and inmate grievances."  Doc. 90, ex. A, p. 30.  Plaintiff also complained about his punitive transfer to Union C.I. and, additionally, sought an investigation into his allegations that someone at Wakulla C.I. was removing his informal grievances from his formal grievances.[4]  *Id.* The formal grievance was returned without action on April 7, 2008, (although mailed on April 8, 2008) because it was not in compliance with the rules.  *Id.*, at 29.  The response advised that Plaintiff did not file his grievance within 15 calendar days of the incident being grieved, but he was attempting to file the grievance over a year later.  *Id.*, at 29.  Plaintiff submitted a grievance appeal to the Secretary on April 9, 2008, alleging that officials from Wakulla Correctional Institution had previously sabotaged two of his grievances (by removing the informal grievance from the formal grievance) and complaining that he was in "transit status for approximately two months without access to the necessary documents."  *Id.*, at 28.  Plaintiff argued that there was "no way [he] could have complied with the 15-day rule."  *Id.*  Plaintiff's grievance appeal to the Secretary was returned "without action" on April 17, 2008, because it was not in compliance with the rules.  *Id.*, at 27.  The response specifically pointed out that Plaintiff had not provided specific information to substantiate allegations of reprisal and a

---

from Wakulla Correctional Institution on April 17, 2007.  Doc. 90, p. 30.

[4] The grievance rules require inmates to attach a copy of the informal grievance he submitted on that issue to the formal grievance.  FLA. ADMIN. CODE R. 33-103.006(1)(g).  Grievances are placed in a locked grievance box.  FLA. ADMIN. CODE R. 33-103.006(1)(h).

transfer in and of itself is not reprisal. *Id.* The response additionally noted that even if Plaintiff was in transit for 2 months, he was attempting to file about an issue from over a year ago, January, 2007. Doc. 90, Ex. A, p. 27. Plaintiff also filed another grievance appeal to the Secretary on April 9, 2008, concerning the same issues. *Id.*, at 32. The appeal was likewise returned without action for being untimely. *Id.*, at 31. The response noted that even if Plaintiff was in transit for 2 months, he was attempting to file about an issue from over a year ago. Doc. 90, Ex. A, p. 35.[5]

In responding to the exhaustion argument raised in the instant motion, Plaintiffs argue, primarily, that the rules do not provide a defined time limit to initiate an informal grievance, and argue that the grievance procedure was not available to Plaintiff Donald Halpin. Doc. 150, p. 2; doc. 176, p. 2. Rule 33-103.011 sets forth the time frames for inmates grievances. Plaintiffs claimed, in response to Defendant Crosby's motion to dismiss, doc. 108, p. 3, and which was referenced and adopted in the instant response, doc. 150, p. 2, that inmate Halpin was "warned by" unnamed prison officials "that if he pursued grievances . . . he would be subject to a disciplinary report (DR)." Doc. 108, p. 3.

Informal grievances "[m]ust be received within a reasonable time of when the incident or action being grieved occurred." FLA. ADMIN. CODE R. 33-103.011(1)(a). The rule provides that reasonableness is "determined on a case-by-case basis." *Id.* Formal grievances and grievance appeals must be "received within 15 calendar days from the date of response . . . ." FLA. ADMIN. CODE R. 33-103.011(1)(b), and (c). Those short

---

[5] Even more untimely was Plaintiff's formal grievance in which he alleged retaliation by Wakulla Correctional Institution officials, specifically naming Defendants West, Boyd, and Spittler, dated by Plaintiff August 29, 2008. Doc. 90, Ex. A, p. 34.

periods of 15 days provide a clear indication to prisoners that waiting a year to file a grievance is not a "reasonable" amount of time. Investigations into events over a year ago will not be effective considering the number of inmates and issues that will arise daily at a Correctional Institution. Filing these grievances over a year after the events was untimely.

> The Eleventh Circuit concluded in Bryant v. Rich, *supra*, that
>
> . . . a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id.*, at 1085.[6] Thus, the record has been thoroughly reviewed to determine if Plaintiffs Donald Halpin did not have the grievance process "available" to him.

While Plaintiffs have argued that inmate Halpin could not grieve these issues while at Wakulla Correctional Institution because of sabotage or threats of retaliation against him, the exhibits Plaintiffs submitted with the second amended complaint show that he did file other grievances while there. *See* doc. 90, ex. A, pp. 11-13 (seeking a transfer; January 6, 2007); pp. 14-16 (challenging classification of inmates, December of 2006); pp. 21-27 (seeking a transfer; December of 2006 through January 1, 2007); pp. 43-48 (grieving the issue of price-gouging in the canteen, July, August and

---

[6] The Court suggested in Bryant, 530 F.3d at 1377, n.16, that it is appropriate to make credibility findings on review of documentary evidence on the issue of exhaustion, at least in the absence of a timely request for an evidentiary hearing by a party. No hearing has been requested, and the grievances submitted with the second amended complaint provide the demonstration needed for a ruling.

September of 2006).  Plaintiff Donald Halpin *could* have submitted timely grievances regarding his equal protection and retaliation claims, and was not intimidated in doing so.

It is also evident that *had* Plaintiff been intimidated *after* being threatened in March of 2007, as alleged in the 2008 grievances, Plaintiff could have grieved the alleged retaliation in timelier fashion.  Upon arriving at another institution away from the officials allegedly harassing him at Wakulla Correctional Institution, Plaintiff *could* and *should* have filed grievances concerning those issues.  Had Plaintiff begun the grievances process in May or June, 2007, upon his arrival at the new institution and away from those he alleges were attempting to threaten him and retaliate against him, those grievances would likely have been addressed on the merits.  Yet Plaintiff waited for another ten or eleven months before initiating the first grievance on these issues.  Plaintiff did not exhaust administrative remedies as to this issue.

This bars consideration of two of the claims raised in the second amended complaint against West, Spittler, and Boyd.  Count II, the Equal Protection claim is intermingled with the First Amendment retaliation claim specified in Count III.  Doc. 90, pp. 24-34. Because neither claim was exhausted by Plaintiff Donald Halpin, and because the claim pertains only to the constitutional rights of that Plaintiff and not the other two Plaintiffs, the motions to dismiss these two claims for failure to exhaust should be granted.

### RICO Claim

All three Defendants argue that Plaintiffs have failed to state a viable RICO claim because they were not injured in their business or property as required under 18 U.S.C.

Case No. 4:06cv457-RH/WCS

§ 1964, and because Plaintiffs do not have compensable damages. Doc. 131, pp. 7-8. While Plaintiffs alleged they had expenses in hiring an attorney to handle the parole proceedings and for Mrs. Halpin to travel and attend the hearing, Defendants contend the alleged RICO "violations are irrelevant to these expenses." *Id.*, at 8. Because Plaintiff's alleged damages do not flow directly from the RICO violation, Defendants seek dismissal of the claim. *Id.*, at 8.

Plaintiffs respond by asserting that items in the canteen were marked up 310% above fair market value, and that they suffered additional damages in prosecuting a case, and they points to other inmates who are alleged to have "questionable paroles" which, it is suggested, were due to paying bribes to Defendants. Doc. 150, pp. 7-9.

These issues have been considered at length with respect to two reports and recommendations entered today, have previously been ruled upon in the reports and recommendations adopted with respect to Defendants Crosby and Alcorn, and the following is the same analysis.

### Standing

RICO's private right of action, contained in 18 U.S.C. § 1964(c), provides, in relevant part, that a "person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit . . , including a reasonable attorney's fee." It is well established that for private parties to recover under the civil RICO provisions, their injury must "flow from the commission of the predicate acts." Sedima v. Imrex Co., Inc., 473 U.S. 479, 497, 105 S.Ct. 3275, 3285 (1985), *quoted in* Pelletier v. Zweifel, 921 F.2d 1465, 1497 (11th Cir. 1991). Thus, to have standing, Plaintiffs must show injury,

and it must be a direct injury, not an indirect injury, and be proximately caused by the violation. Byrne v. Nezhat, 261 F.3d 1075, 1110 (11th Cir. 2001). Here, Plaintiffs must show they have "been injured in [their] business or property by the conduct constituting the violation." Sedima, 473 U.S. at 496, 105 S.Ct. at 3285, *quoted in* Pelletier, 921 F.2d at 1499; *see also* Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). The issue is whether the injury was directly caused by the RICO violation, not whether the injury was reasonably foreseeable. Bivens Gardens Office Bldg. v. Barnett Banks of Fla., 140 F.3d 898, 908 (11th Cir. 1998); Byrne, 261 F.3d at 1110.

As has been found in the prior report and recommendations in this case, Plaintiffs did not pay any bribes. Thus, there is no claimed injury and no loss of property in that fact. While Plaintiffs alleged that they paid attorney's fees to Mr. David Collins to represent Plaintiff and related expenses for Plaintiff's family to attend clemency and parole hearings, doc. 90, p. 15, those are not injuries "by reason" of any illegal conduct of the Defendants. *See* Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 266-268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (concluding that § 1964(c)'s "by reason of" language required a plaintiff to show that the defendant's RICO violation not only was a 'but for' cause of his injury, but was the proximate cause as well).

The civil RICO provision was not "meant to allow all factually injured plaintiffs to recover." Holmes, 503 U.S. at 266, 112 S.Ct. 1311, *explained in* Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 456, 126 S.Ct. 1991, 1996, 164 L.Ed.2d 720 (2006). "The direct-relation requirement avoids the difficulties associated with attempting to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other,

independent, factors. . . ." Holmes, 503 U.S., at 269, 112 S.Ct. 1311, *explained in* Bridge v. Phoenix Bond & Indem. Co., *supra*, 128 S.Ct. at 2142.  Thus, there must be a "direct relation between the injury asserted and the injurious conduct alleged" and not just that the injury would not have occurred "but for" the violation.  Anza, 547 U.S. at 457, 126 S.Ct. at 1996.  The injuries claimed by Plaintiffs are not the result of any wrong-doing by any named Defendant.  Plaintiffs would have hired an attorney, and did so, separate from any alleged bribery.  Because Plaintiffs did not lose property, they do not have standing to bring the RICO claims.  The motions to dismiss as to the RICO claim should be dismissed for lack of standing.

### Failure to State a Claim

Even if Plaintiffs could allege standing, the RICO claim still fails as has been previously outlined in the prior reports and recommendations.  It serves little purpose to go into this issues in great detail as it has been explained in the prior reports and recommendations.  Suffice it to state that this conclusion is based upon the finding that Plaintiffs do not meet the requirements of 18 U.S.C. § 1962(c) because they fail to show a "pattern of racketeering activity."  Plaintiffs do not sufficiently alleged the necessary predicate acts and, thus, fail to present a viable claim upon which relief may be granted.

Moreover, the complaint fails to meet the requirements of Rule 9.  "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."  Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007), *citing* Fed.R.Civ.P. 9(b); Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir.1997).  In a case like this, with

multiple Defendants, a complaint must "inform each defendant of the nature of his alleged participation in the fraud." Ambrosia Coal & Const. Co., 482 F.3d at 1317, *quoting* Brooks, 116 F.3d at 1381.  A properly pled complaint cannot simply lump together all Defendants in general allegations of fraud.  Ambrosia Coal & Const. Co., 482 F.3d at 1317.  Plaintiffs have failed to plead the predicate acts with particularity, in accordance with Fed.R.Civ.P. 9(b).  *See* Liquidation Com'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1355 (11th Cir. 2008).  Plaintiffs do not provide particular, discrete facts, much less identify any specific dates or times, as required by Rule 9.  Instead, the Defendants are lumped together and alleged to simply be part of a conspiracy.  Rule 9 is not satisfied by such generalities.  The motion to dismiss the RICO claims should be granted because the complaint fails to state a claim, fails to allege facts with particularity as required by Rule 9, and because Plaintiffs do not have standing to bring this claim.

As Plaintiffs have failed to sufficiently allege the predicate acts necessary to state a RICO claim against the Defendants, there is no need to proceed further.  Having failed to sufficiently allege predicate acts to support a RICO claim, Plaintiffs have also failed to allege a conspiracy claim under RICO.

**Government in the Sunshine claim**

Defendants contend that supplemental jurisdiction should not be exercised over this sate law claim because it "is not firmly rooted in the other claim which may remain in this action." Doc. 131, p. 9. Defendants join in the arguments raised in other pending motions to dismiss that this claim should not continue.  *Id.*

In my earlier report and recommendation, doc. 68, I concluded that the "Florida Government in the Sunshine claim [was] not 'so related' to [the] remaining RICO claim (assuming it survives another motion to dismiss) that this court should adjudicate it." *Id.*, at 17.  It was recommended that because the state law claim was "firmly rooted in Florida law," it should "more properly" be decided by a Florida court.  *Id.*  Three reports and recommendations are entered today, and if adopted, all federal claims will be dismissed.  The court should not retain jurisdiction over this state law question.

**Conclusion**

Accordingly, it is **RECOMMENDED** that the motions to dismiss, doc. 131, filed by Defendants West and Spittler, and by Defendant Boyd, doc. 152, be **GRANTED** as to the RICO claim because it fails to allege claims of fraud with particularity as required by FED. R. CIV. P. 9(b), fails to state a claim upon which relief may be granted, and because Plaintiffs lack standing, and be **GRANTED** as to the Equal Protection and Retaliation claims because those claims are unexhausted as required by 42 U.S.C. § 1997e(a).  The motion to dismiss should also be **GRANTED** as to the Government in the Sunshine law claim, and this Court should not exercise supplemental jurisdiction over that single remaining state law claim.  If all three reports and recommendations are adopted, all claims will have been dismissed and the Clerk should be directed to enter judgment accordingly.

**IN CHAMBERS** at Tallahassee, Florida, on July 9, 2009.

> s/   William C. Sherrill, Jr.
> **WILLIAM C. SHERRILL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

Case No. 4:06cv457-RH/WCS

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**